SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONTGOMERY

ALPIN HAUS SKI SHOP, INC.,

                               Plaintiff,           **SUMMONS**

    -against-

                                         Index No.:

BRP US INC.,

                            Defendant.

To the above-named Defendant:

    You are hereby Summoned and required to serve upon Plaintiff's attorney an Answer to the Verified Complaint in this action within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated: January 26, 2023

                                  O'CONNELL & ARONOWITZ, P.C.

                 By:                               

Trial is desired in Montgomery County.                       Brian M. Culnan
The basis of the venue designated is that                  *Attorneys for Plaintiff*
Plaintiff maintains its principal place of                  54 State Street, 9th Floor
business in Montgomery County.                          Albany, New York 12207
                                                  (518) 462-5601

{01177070.1}

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONTGOMERY

---

ALPIN HAUS SKI SHOP, INC.,

                            Plaintiff,

    -against-

BRP US INC.,

                            Defendant.

**VERIFIED COMPLAINT**

Index No.:

---

       Plaintiff Alpin Haus Ski Shop, Inc., by and through its attorneys, O'Connell & Aronowitz, P.C., as and for its Verified Complaint against Defendant, respectfully alleges as follows:

### PARTIES

1.     Plaintiff Alpin Haus Ski Shop, Inc. ("Alpin Haus"), is a domestic business corporation with its principal place of business located at 1863 State Highway 5S, Amsterdam, New York.

2.     Upon information and belief, Alpin Haus is one of the leading outdoor recreational retailers in the Northeast, and it employs over 200 people across its six locations in Amsterdam, Clifton Park, Saratoga, and Port Jervis, New York, and Oak Ridge, New Jersey.  As relevant to this action, it has sold Ski-Doo snowmobiles and Sea-Doo personal watercraft for over 50 years, and it has been named the Ski-Doo District Dealer of the Year (among numerous other industry awards and recognitions).

3.     Upon information and belief, Defendant BRP US Inc. ("BRP") is a business corporation organized under the laws of the State of Delaware and authorized to transact business within the State of New York.  BRP maintains its principal place of business at 1111 J.A. Bombardier Boulevard SW, Palm Bay, Florida 32908.

4.     Upon information and belief, BRP designs, develops, manufactures, markets and distributes motorized recreational vehicles, including but not limited to Ski-Doo snowmobiles, Sea-Doo

personal watercraft and pontoon boats, and the parts and accessories needed to operate those motorized recreational vehicles.

5.     Upon information and belief, at all relevant times herein, Alpin Haus and BRP were parties to a Dealer Agreement ("the Dealer Agreement") by which BRP authorized Alpin Haus (a) to sell at retail Ski-Doo snowmobiles, Sea-Doo personal watercraft, and the parts and accessories needed to operate those motorized recreational vehicles, and (b) to service those BRP-manufactured products. A copy of the Dealer Agreement is attached hereto as Exhibit A.

6.     Upon information and belief, the Dealer Agreement is scheduled to expire on January 31, 2023, unless renewed by the parties. *See* Exhibit A, ¶ 5.

7.     Upon information an belief, by reason of the rights conferred upon Alpin Haus by BRP through the Dealer Agreement, under the New York Franchised Motor Vehicle Dealer Act (New York Vehicle and Traffic Law ["VTL"], Article 17-A), Alpin Haus is a "franchised motor vehicle dealer" as that term is defined in VTL § 462.

8.     Upon information and belief, by reason of the rights conferred by BRP upon Alpin Haus through the Dealer Agreement, BRP is a "franchisor" as that term is defined in VTL § 462.

9.     Upon information and belief, in the Franchised Motor Vehicle Dealer Act, the term "termination" means "a franchisor's proposed termination, cancellation, non-renewal, or rescission" of a franchise agreement.  *See* VTL § 462.

10.     This lawsuit arises from BRP's (i) unlawful threats to terminate and/or not renew the Dealer Agreement, as part of an effort to coerce Alpin Haus to take action prejudicial to its business and monetary interests; (ii) unlawful threats to terminate and/or not renew the Dealer Agreement, as part of an effort to coerce Alpin Haus into substantially changing its business practices and purchasing expensive software systems not needed for the efficient operation of its business; and (iii) unlawful threats to terminate and/or not renew the Dealer Agreement without due cause.

11.     Alpin Haus seeks to invoke its rights under the Franchised Motor Vehicle Dealer Act to a "stay" of BRP's proposed termination of the Dealer Agreement "until the final judgment has been rendered" in this action. *See* VTL § 463(2)(e)(1).

12.     Upon information and belief, and pursuant to VTL § 463(2)(e)(2), the issues to be determined in this action are whether BRP's proposed termination of the Dealer Agreement "was issued with due cause and in good faith. The burden of proof shall be upon [BRP] to prove that due cause and good faith exist. [BRP] shall also have the burden of proving that all portions of its current or proposed sales and services requirements for [Alpin Haus] are reasonable."

### JURISDICTION AND VENUE

13.     Upon information and belief, because BRP transacts business and has availed itself of the privilege of conducting activities within the State of New York, and committed acts that threaten injury to Alpin Haus within the State of New York, this Court may exercise jurisdiction over BRP.

14.     Upon information and belief, pursuant to CPLR 503(c), Montgomery County is a proper venue for the place of the trial of this action because Alpin Haus maintains its principal place of business in Montgomery County.

### RELEVANT FACTS

The Dealer Agreement Requires
Alpin Haus to Utilize a Dealer
Management System:

15.     Upon information and belief, the Dealer Agreement expressly references and incorporates the BRP US Inc. Dealer Agreement General Provisions ("the General Provisions") and the BRP US Inc. Dealer Operation Standards ("the Dealer Operation Standards"). Copies of the General Provisions and the Dealer Operation Standards in effect at the time that the parties entered into the Dealer Agreement are attached hereto, respectively, as Exhibits B and C.

{01177073.3}

3

16.     Upon information and belief, at the time that the parties entered into the Dealer Agreement, the BRP Dealer Operation Standards that were incorporated into that agreement called for Alpin Haus to "operate a [Dealer Management System] software that provides the following minimum functionality:

      (i)     Major unit sales and inventory management;
      (ii)    Parts sales and inventory management;
      (iii)   Service sales and management;
      (iv)   Customer record management;
      (v)    Departmental and transaction reporting capabilities."

*See* Exhibit C, § 1(d).

17.     Alpin Haus has utilized the well-regarded Motility Software Solutions Dealer Management System for nearly ten years.

18.     Upon information and belief, prior to 2022, BRP has deemed Alpin Haus' use of the Motility software system as satisfying the Dealer Management System ("DMS") requirement in the Dealer Operation Standards in effect at the time that the parties entered into the Dealer Agreement.

**BRP Threatens Alpin Haus With Non-Renewal**
**of the Dealer Agreement If It Did Not Substantially**
**Alter Its Operations to Comply With a Revised DMS**
**Dealer Operation Standard:**

19.     Upon information and belief, on or about February 1, 2022, BRP unilaterally revised its Dealer Operation Standard, as to DMS software, to require the dealer to "use a Dealer Connect Program certified DMS."

20.     Upon information and belief, after BRP unilaterally revised its Dealer Operation Standard as to DMS software, BRP officials advised Alpin Haus that BRP did not consider the Motility DMS software system as meeting the revised DMS Dealer Operation Standard.

{01177073.3}

4

INDEX NO. EF2023-49

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 6 of 60

RECEIVED NYSCEF: 01/26/2023

21.     Upon information and belief, during 2022, Alpin Haus officials attempted to work with BRP so that the Motility DMS software system would be deemed compliant with the revised DMS Dealer Operation Standard.

22.     Upon information and belief, despite the best efforts of Alpin Haus officials to work with BRP so that the Motility DMS software system would be deemed compliant with the revised DMS Dealer Operation Standard, BRP refused to recognize Motility as a Dealer Connect Program certified DMS System.

23.     Upon information and belief, in late 2022, BRP threatened to terminate/not renew the Dealer Agreement if Alpin Haus did not start employing a DMS system specifically approved by BRP.

24.     On or about December 9, 2022, BRP reiterated to Alpin Haus in writing that Alpin Haus needed to start employing a DMS system specifically approved by BRP, or it would be considered non-compliant with the revised DMS Dealer Operation Standard. A copy of the correspondence, dated December 9, 2022, from BRP to Alpin Haus is attached hereto as Exhibit D.

25.     On or about January 3, 2023, through counsel, Alpin Haus responded to BRP's correspondence of December 9, 2022.  A copy of the correspondence, dated January 3, 2023, from Alpin Haus' counsel to BRP is attached hereto as Exhibit E. In the correspondence, Alpin Haus notified BRP that it objected to BRP's demand that Alpin Haus cease using the Motility DMS software system and start employing a DMS system specifically approved by BRP. More precisely, Alpin Haus notified BRP that BRP was unreasonably demanding that Alpin Haus undergo expensive and otherwise unnecessary changes to its business operations to comply with BRP's revised DMS Dealer Operation Standard.

26.     Though the January 3, 2023 correspondence, Alpin Haus demanded that BRP notify Alpin Haus in writing that (a) BRP intends to renew the Dealer Agreement, and (b) because Alpin Haus already uses the Motility DMS software system, Alpin Haus will not be required employ a Dealer Connect Program certified DMS system of less utility to Alpin Haus.

{01177073.3}

5

27.     Upon information and belief, to date, BRP has neither rescinded its threat to terminate/not renew the Dealer Agreement nor its demand that Alpin Haus undergo expensive and otherwise unnecessary changes to its business operations to comply with BRP's revised DMS Dealer Operation Standard.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Violation of Vehicle and Traffic Law Article 17-A)

28.     Alpin Haus repeats and reiterates each and every allegation of paragraphs 1 through 27 of this Verified Complaint as if each were fully set forth herein.

29.     Upon information and belief, by threatening termination/non-renewal of the Dealer Agreement, BRP is attempting to coerce Alpin Haus to cease using the Motility DMS software system and to replace it with a DMS system specifically approved by BRP.

30.     Upon information and belief, replacement of the Motility DMS software system with a DMS system specifically approved by BRP will not enhance customer safety, loyalty or satisfaction.

31.     Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement will require Alpin Haus to undergo expensive and otherwise unnecessary changes to Alpin Haus' business operation without accompanying benefits to Alpin Haus.

32.     Upon information and belief, replacement of the Motility DMS software system with a DMS system specifically approved by BRP would force Alpin Haus to employ a DMS system of less utility to Alpin Haus.

33.     Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement was unreasonable, made in bad faith, and issued for ulterior business motives.

34.     Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer

Agreement violates the Franchised Motor Vehicle Dealer Act's prohibition against a franchisor such as BRP from seeking to coerce dealers into signing agreements or otherwise acting contrary to their economic interests. *See* VTL § 463(2)(b).

35.    Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement violates the Franchised Motor Vehicle Dealer Act's prohibition against a franchisor such as BRP from conditioning dealer agreement renewals on substantial renovations by the dealer. *See* VTL § 463(2)(c).

36.    Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement violates the Franchised Motor Vehicle Dealer Act's prohibition against a franchisor such as BRP from refusing to renew a dealer agreement except for "due cause" and after proper notice. *See* VTL § 463(d)(1).

37.    Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement violates the Franchised Motor Vehicle Dealer Act's prohibition against a franchisor such as BRP from using unreasonable, arbitrary or unfair performance standards in determining a dealer's compliance with a dealer agreement. *See* VTL § 463(2)(gg).

38.    Upon information and belief, BRP's demand that Alpin Haus replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement violates the Franchised Motor Vehicle Dealer Act's prohibition against a franchisor such as BRP from imposing unreasonable restrictions on renewal or conditioning renewal on compliance with subjective standards. *See* VTL § 466(1).

39.     Upon information and belief, the Dealer Agreement between Alpin Haus and BRP is currently scheduled to expire on January 31, 2023.

40.     Upon information and belief, a dealer seeking to invoke the automatic stay provision of VTL § 463(2)(e)(1) to challenge a threatened termination of a dealer agreement must do so <u>before</u> the termination of the dealer agreement in question has occurred.

41.     Upon information and belief, the threatened termination of a manufacturer's delivery of a unique product to a dealer constitutes irreparable harm to the good will and economic interests of the dealer.

42.     Upon information and belief, in 2022, Alpin Haus sold in excess of $2.1 million of BRP-manufactured properties.

43.     Upon information and belief, Alpin Haus has sold Ski-Doo snowmobiles and Sea-Doo Personal watercraft for over 50 years and invested substantial money in promoting the Ski-Doo and Sea-Doo brands and Alpin Haus' relationship with BRP.

44.     By reason of foregoing, BRP's unreasonable termination of the Dealer Agreement would cause irreparable harm to the good will and business interests of Alpin Haus.

45.     By reason of the foregoing, this Court is presented with a justiciable controversy.

46.     By reason of the foregoing, this Court should stay BRP's threatened termination/non-renewal of the Dealer Agreement until a final judgment on the dispute between Alpin Haus and BRP has been rendered. *See* VTL § 463(2)(e)(1).

47.     By reason of the foregoing, Alpin Haus has been damaged in an amount to be determined by the trier of fact.

48.     Alpin Haus has not previously applied to a court of competent jurisdiction for the relief sought herein.

{01177073.3}

8

## AS AND FOR A SECOND CAUSE OF ACTION
### (Duty of Good Faith and Fair Dealing)

49.     Alpin Haus repeats and reiterates each and every allegation of paragraphs 1 through 48 of this Verified Complaint as if each were fully set forth herein.

50.     Upon information and belief, when making the demand that Alpin Haus replace the Motility DMS software system or face termination of the Dealer Agreement, BRP knew or should have known that the cost of implementing such changes would cost Alpin Haus in excess of $250,000.00.

51.     Upon information and belief, when making the demand that Alpin Haus replace the Motility DMS software system or face termination of the Dealer Agreement, BRP knew or should have known that given the number of product lines sold and locations operated by Alpin Haus, BRP would be requiring Alpin Haus to employ a DMS system of less utility to Alpin Haus.

52.     By reason of the foregoing, BRP's demand that Alpin Hause replace the Motility DMS software system with a DMS system specifically approved by BRP or face termination of a dealer relationship that has existed for nearly 50 years was unreasonable, made in bad faith, and issued for ulterior business motives.

53.     By reason of the foregoing, BRP's demand that Alpin Haus replace the Motility DMS system with a DMS system specifically approved by BRP or face termination of the Dealer Agreement constituted a breach of the duty of good faith and fair dealing inherent in every contractual relationship.

54.     Upon information and belief, BRP's unreasonable termination of a dealer relationship that has existed for over 50 years would cause injury to the goodwill and business interests of Alpin Haus.

55.     By reason of the foregoing, BRP's unreasonable termination of the Dealer Agreement would cause damage to Alpin Haus, in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiff Alpin Haus Ski Shop, Inc., respectfully requests that the Court enter judgment in its favor as follows:

(a) on the first cause of action, awarding damages to Alpin Haus in an amount to be determined by the trier of fact;

(b) on the first cause of action, staying BRP's proposed termination of the Dealer Agreement until such time as a final judgment on the dispute between Alpin Haus and BRP has been rendered;

(c) on the second cause of action, awarding damages to Alpin Haus in an amount to be determined by the trier of fact;

(d) awarding to Alpin Haus its reasonable attorneys' fees and costs, as permitted by law;

(e) awarding to Alpin Haus interest, as permitted by law; and

(f) awarding to Alpin Haus such other and further relief as the Court may deem just and proper.


DATED: January 26, 2023                    O'CONNELL & ARONOWITZ, P.C

                                By:    _____
                                       Brian M. Culnan, Esq.
                                       *Attorneys for Plaintiff*
                                       54 State Street, 9th Floor
                                       Albany, New York 12207
                                       bculnan@oalaw.com
                                       (518) 462-5601

## VERIFICATION

STATE OF NEW YORK       )
                              ) ss.:
COUNTY OF MONTGOMERY   )

      ANDY HECK, being duly sworn, deposes and says that deponent is the President of Alpin Haus

Ski Shop, Inc., Plaintiff in this action, and that he has read this Verified Complaint; that he knows the

contents thereof to be true to his knowledge, except as to those matters stated to be upon information

and belief, and as to those matters, he believes them to be true.

                                       _____
                                         Andy Heck

Sworn to before me this
26th day of January 2023

_____
Notary Public, State of New York
Qualified in the County of: Montgomery
My Commission Expires: 7-9-2023

Vicki J. Meyers
Notary Public - The State of New York
No. 01ME6170611
Qualified in Montgomery County
My Commission Expires July 9, 2023

{01177073.2}
                                     11

# EXHIBIT A

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 14 of 60



# BRP US INC.
# DEALER AGREEMENT

---

FILED: MONTGOMERY COUNTY CLERK 01/26/2023 03:53 PM

INDEX NO. EF2023-49

NYSCEF DOC. NO. 3

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 15 of 60

RECEIVED NYSCEF: 01/26/2023

---

**BRP US INC.**
**DEALER AGREEMENT**

**THIS DEALER AGREEMENT** ("Agreement") is made by and between

**BRP US INC.**, a Delaware corporation ("BRP"), having a place of business located at 1111, J. A. Bombardier Boulevard SW, Palm Bay, Florida 32908

and

0000690181          (Dealer Number)

ALPIN HAUS SKI SHOP, INC.

doing business as

ALPIN HAUS SKI SHOP, INC.

with its place of business described in Addendum A to this Agreement ("**Dealer**").
BRP and Dealer are hereafter referred to individually as a "Party" and collectively as the "Parties".

In consideration of the mutual agreements hereafter made in this Agreement, the Parties hereto agree as follows:

**1.   Appointment**

(a)   Appointment of Non-Exclusive Dealer. BRP hereby appoints Dealer as an authorized non-exclusive retail dealer of Products, as defined in paragraph (c) of this Section 1, at the approved location designated in Addendum A to this Agreement ("Dealer Location"). BRP expressly reserves its right, in its sole discretion, to appoint or relocate other dealers of any Products in any location, including within or outside Dealer's Primary Market Area.  In addition, BRP also reserves its right to sell Products through alternative or additional retailers or channels and to promote Products on the Internet, other multi-media networks or otherwise.

(b)   Dealer Location. Unless permitted by BRP, Dealer agrees not to directly or indirectly sell, display or service Products or otherwise act as an authorized BRP dealer at any location other than the Dealer Location. Dealer shall not, without the express written approval of BRP: (i) move or operate at another location; or (ii) make any material change in or modification to any of Dealer's premises. BRP has no obligation to approve any request from Dealer to establish or operate any alternate BRP dealership.

(c)   Products Covered by the Agreement. This Agreement authorizes Dealer to be a BRP Dealer only for the BRP product line(s) listed on Addendum B. This Agreement is independent and separately enforceable for each product line listed on Addendum B and the use of this common Agreement for all product lines is intended to simplify the execution of the Agreement. This Agreement grants no rights to purchase or sell other Vehicles and PAC than those specified in

---

BRP US INC. Dealer Agreement 2013 – V.1          2

Addendum B duly executed by the Parties (collectively referred herein as the "Products").

**2.   General Provisions and BRP Dealer Operation Standards**

(a)   Other Dealer Documents. The BRP US Inc. Dealer Agreement General Provisions ("General Provisions") and the BRP US Inc. Dealer Operation Standards ("Operation Standards") are collectively referred to as the Other Dealer Documents ("Other Dealer Documents") and are hereby expressly made a part of this Agreement and incorporated herein. Throughout the Term of this Agreement, the Operation Standards are subject to revision or modification by BRP at its discretion. Dealer expressly acknowledges that copies of the Other Dealer Documents have been provided to Dealer by BRP and have been read and agreed to by Dealer.

(b)   Capitalized Word or Sentence. Any capitalized word or sentence not defined in this Agreement has the meaning given to such word or sentence in the Other Dealer Documents.

**3.   Ownership and Management**

(a)   Owners, Officer(s) and Director(s). To induce BRP to enter into this Agreement, Dealer represents that the persons identified in the Statement of Ownership and Management, which is attached as Addendum C, are Dealer Owner(s), officer(s), director(s) and general manager. It is intended that this Agreement be interpreted as a personal service agreement. BRP is entering into this Agreement in reliance upon Dealer's representations as to Dealer ownership and management, and upon the continued provision by Dealer's Owner(s), officer(s), director(s) and general manager of their personal services in the fulfillment of Dealer's obligation under this Agreement. No change, directly or indirectly, intentionally or otherwise, may be made to Dealer's Owner(s), officer(s) or director(s) without first complying with the requirements of this Agreement for such changes.

(b)   Personal Qualifications. The Owner(s), officer(s) and director(s) identified in Addendum C possess and will maintain the personal qualifications, experience, skill and commitment necessary to ensure that Dealer will perform its obligation under this Agreement in the most effective manner.

**4.   Due Authorization and Validity**

This Agreement shall bind BRP only when it bears the signatures of two (2) authorized BRP employees and a duplicate original thereof is delivered personally, by mail or email to Dealer or to Dealer's place of business.

**5.   Term**

This Agreement shall take effect when executed by both Parties (the "**Effective Date**") This Agreement shall expire on 31/01/2023 (DD/MM/YYYY) ("Term"), unless otherwise terminated or renewed as provided in the General Provisions.

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 17 of 60

6.   **Additional Terms and Conditions**

This Agreement, including the Addenda A, B, C and if applicable Addendum D and the Other Dealer Documents incorporated herein by reference, contains the entire understanding between the Parties with respect to the subject matter hereof and supersedes any prior understanding or written or oral agreements among them with respect thereto.  No representations or statements other than those expressly set forth or referred to in these documents, or in Dealer's written application documents, were made or relied upon in entering into this Agreement. Each Addendum may be amended at any time by mutual agreement of Dealer and BRP, through the later execution by both Parties of a replacement, which then shall be deemed part of this Agreement. This Agreement shall not be modified except as expressly authorized in writing signed by both Parties hereto; provided, however, that the Parties agree that any and all changes that BRP may make to the Operation Standards (as applicable to all of its Dealers) shall be binding upon Dealer as if such changes were adopted expressly in writing by Dealer as amendments to this Agreement.

7.   **Governing Law and Severability**

This Agreement shall be construed in accordance with the laws of the State of Florida. If any provision contained herein contravenes the laws or regulations of any state or other jurisdiction wherein this Agreement is to be performed, or denies access to the procedures, forums, or remedies provided for by such laws or regulations, such provision shall deemed modified to conform to such laws or regulations, and all other terms and provisions shall remain in full force.

*SIGNATURES ARE ON THE NEXT PAGE*

8.  **Signature**

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the day and year written below.

By signing on behalf of Dealer, the person that signs represents and guaranties that he (she) have the authority to bind Dealer.

| DEALER | |
|---|---|
| By: | *Andrew Heck*<br>Andrew Heck (Jan 3, 2020)<br>Signature of Authorized Dealer Representative |
| Corporate Title: | President |

| Accepted by BRP | |
|---|---|
| By: | *Audra Macon*<br>Audra Macon (Feb 3, 2020)<br>Signature of authorized BRP representative |
| Corporate Title: | Global B2B Development and Commercial Support€ |

| | |
|---|---|
| By: | *Dalton Bohlman*<br>Dalton Bohlman (Feb 3, 2020)<br>Signature of authorized BRP representative |
| Corporate Title: | Vice-President, Global Services, Parts & Accessories |



## DEALER AGREEMENT
## ADDENDUM A

### DEALER LOCATION

1. **General Information on Dealer**

   (a) <u>Legal Entity  Name of Dealer</u>  :  ALPIN HAUS SKI SHOP, INC.

   (b) <u>D.B.A Name of Dealer</u>  :  ALPIN HAUS SKI SHOP, INC.

2. **Approved Dealer Location**

   BRP has approved the location of the following premises, and no others, for dealership operations by Dealer:

   4850  STATE HWY 30

   AMSTERDAM

   NY                         , US                  , 12010-7435

   ("**Dealer Location**")

   Dealer hereby certifies that the foregoing information is true and complete as of the date of signature of this Agreement. This Addendum cancels and replaces any prior understanding on Dealer Location, including any prior executed Addendum A.

| DEALER |
| --- |
| By: *Andrew Heck*<br>Andrew Heck (Jan 2, 2020)<br>Signature of Authorized Dealer Representative |



## DEALER AGREEMENT
## ADDENDUM B PRODUCTS

0000690181          (Dealer Number)

ALPIN HAUS SKI SHOP, INC.

doing business as

ALPIN HAUS SKI SHOP, INC.

By the execution of the following Addendum, BRP authorizes Dealer and Dealer agrees to sell at retail and service the following product line(s) and the related parts, accessories and clothing.

Sea-Doo Watercraft, Ski-Doo Snowmobile

The Parties expressly acknowledge and understand that this Agreement is independent and separately enforceable for each product line listed above and the use of this common Agreement is intended to simplify the execution of the Agreement(s). The Parties acknowledge and agree that some Products may be subject to specific laws or regulations which may prescribe, among others, more restrictive requirements for the termination or the non-renewal of this Agreement. The Parties agree that the format of this Agreement or the execution for more than one product line shall in no case be interpreted in such manner that requirements applicable to regulated Products are applicable to unregulated Products.

The above Addendum B cancels and replaces any prior understanding on Products covered by the Agreement, including any prior executed Addendum B.

| DEALER |
|---|
| By: _Andrew Heck_  Andrew Heck (Jan 2, 2020)  Signature of Authorized Dealer Representative |
| **BRP** |
| By: _Audra Mason_  Audra Mason (Feb 3, 2020)  Signature of authorized BRP representative |
| By: _Delfani Bekhman_  Delfani Bekhman (Feb 3, 2020)  Signature of authorized BRP representative |



**DEALER AGREEMENT**
**ADDENDUM C**

**STATEMENT OF OWNERSHIP AND MANAGEMENT**

1. <u>Legal Entity Name of Dealer</u>:    ALPIN HAUS SKI SHOP, INC.

2. <u>D.B.A Name of Dealer</u>:    ALPIN HAUS SKI SHOP, INC.

3. <u>Dealer is a</u>:

   ○         Sole Proprietorship

   ○         Sole Partnership

   ○         Ltd Liability company

   ○         Corporation

   \* BRP may request related documentation or additional information

4. The following persons are the Owners of Dealer:

| Name and Address of Each Owners of Dealer | Percentage of Ownership (% of voting shares if applicable) |
|---|---|
| Name:  Andrew Heck<br>Address:  137 Country Ridge Ct, Amsterdam NY 12010<br>Email:  aheck@alpinhaus.com | 48.95                                  % |
| Name:  Gregory Heck<br>Address:  156 Hickory Ridge Dr.<br>Email:  gheck@alpinhaus.com | 31.47                                  % |
| Name:  Kathryn Osborn<br>Address:  8 Towline Dr.  Clifton Park NY<br>Email:  kosborn@alpinhaus.com | 9.79                                  % |

| Name: | |
|---|---|
| Address: | % |
| Email: | |

| Name: | |
|---|---|
| Address: | % |
| Email: | |

5.  The following persons are Dealer officer(s), director(s) and general manager:

| Name, Personal Address and Email Address of Dealer officer(s), director(s), and general manager | Title |
|---|---|
| Name:   Andrew Heck<br>Address:  137 Country Ridge Ct. Amsterdam NY 12010<br>Email:   aheck@alpinhaus.com | President |
| Name:<br>Address:<br>Email: | |
| Name:<br>Address:<br>Email: | |
| Name:<br>Address:<br>Email: | |

6.  The following persons are Authorized Representative of Dealer, and as such shall be physically present at Dealer's Location at such times as are required by this Agreement:

| Name, Address and Email Address of Authorized Representative(s) | Title |
|---|---|
| Name:   Gregory Heck<br><br>Address:  156 Hickory Ridge Dr.  Amsterdam NY 12010<br><br>Email:   gheck@alpinhaus.com | VP |
| Name:<br><br>Address:<br><br>Email: |  |
| Name:<br><br>Address:<br><br>Email: |  |

7. Any of the Dealer Owner(s), officer(s), director(s) and general manager, including the Authorized Representative, shall have the authority to execute documents relating to dealership operations and receive communications on behalf of Dealer. These persons shall be agents of Dealer, and BRP is entitled to rely on the authority of any one or more of these people to make any decision on behalf of Dealer with respect to Dealer's operations.  BRP has entered into this Agreement in reliance upon the qualifications of the persons identified in this Addendum C and their continued provision of personal services in the ownership and management of Dealer.

Dealer hereby certifies that the foregoing information is true and complete as of the date of signature of this Agreement. This Addendum cancels and replaces any prior understanding on Ownership and Management of the Dealer, including any prior Addendum C.

| DEALER |
|---|
| By:  *Andrew Heck*<br>Andrew Heck (Jan 2, 2020)<br>     Signature of Authorized Dealer Representative |

# EXHIBIT B

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 25 of 60



# BRP US INC.
# DEALER AGREEMENT
# GENERAL PROVISIONS



### DEALER AGREEMENT
### GENERAL PROVISIONS

### TABLE OF CONTENT

1.   Definitions ........................................................................................... 1

2.   Purchase of Products and Delivery ..................................................... 3

3.   Price, Payment and Financial Requirements ....................................... 4

4.   Reporting of Shortages or Defects ...................................................... 5

5.   Dealer Responsibilities ........................................................................ 5

6.   Safety ................................................................................................... 8

7.   Product Warranty ................................................................................. 9

8.   Trademarks and Name ......................................................................... 10

9.   Reports ................................................................................................. 11

10.  Relationship with BRP ......................................................................... 11

11.  Confidential Information ....................................................................... 11

12.  Change in Dealer Ownership .............................................................. 12

13.  Succession Plan ................................................................................... 13

14.  Death or Incapacity of Dealer Owner .................................................. 13

15.  Renewal, Termination or Non-renewal ................................................ 13

16.  Repurchase of Products, Restocking Charges and Credits Due ........ 16

17.  Limitation of Remedies ........................................................................ 17

18.  Indemnity .............................................................................................. 17

19.  Force Majeure ...................................................................................... 17

20.  Notices .................................................................................................. 17

21.  Counterparts, Signature ...................................................................... 18

22.  Arbitration ............................................................................................. 18

23.  Miscellaneous ...................................................................................... 18

BRP US INC. Dealer Agreement General Provisions 2013 – v.1



## DEALER AGREEMENT
## GENERAL PROVISIONS

### GENERAL PURPOSE AND OBJECTIVES

This Dealer Agreement represents a covenant between BRP and Dealer to deliver to current and future BRP customers the most extraordinary recreational experience that is driven by the BRP vision: "Passion and innovation that move the powersports world".

BRP dedicates itself to the design, engineering, manufacture, marketing and supply of BRP products and services to achieve this vision. Similarly, Dealer dedicates itself to serving the BRP customer and ensuring that BRP products are sold and serviced in a manner that promotes the BRP experience while increasing customer loyalty and customer satisfaction.

BRP has appointed Dealer as an authorized BRP dealer in reliance upon, among others, Dealer undertaking to conduct its BRP dealership operations in the following manner:

- In accordance with the requirements and standards set forth in this Agreement and the BRP US Inc. Dealer Operation Standards, and

- Through exemplary, sound and ethical business practices and through conscientious regard for quality customer service.

Dealer acknowledges that in becoming an authorized BRP dealer, Dealer will become part of a dealer network that is designed to provide, at designated locations, dealerships that are qualified to fulfill needs of BRP customers through:

- The sale of BRP products, including knowledgeable presentations of their features (including safety features) and benefits, operation, proper inspection and preparation prior to delivery; and

- Prompt, efficient and courteous service for owners of BRP products so that interruptions of use of such BRP products are minimized.

Dealer also acknowledges the importance of the BRP Dealer Certification Program, incentive and other programs adopted by BRP, from time to time, which are intended to influence key business practices that enhance the customer experience and promote dealership profitability and recognizes that it should take full advantage of the benefits of these programs in order to deliver the ultimate customer experience in its dealership.

### 1. Definitions

Throughout this Agreement various abbreviations and abbreviated phrases are used. Their meanings are:

(a) "Authorized Representative" means a qualified representative of Dealer, which may be as a General Manager, whose full-time professional efforts are devoted to the conduct of Dealer Operations, who is authorized on behalf of Dealer to execute documents and make all operational decisions with respect to Dealer Operations, on whose authority BRP is entitled to rely, and who is physically present at Dealer Location during most of Dealer's customary operating hours. The Dealer Owner(s), officer(s), director(s) and general manager are deemed to be Authorized Representative of Dealer.

(b) "BRP" means BRP US Inc.

(c) "Dealer Binder" means BRP Dealer Binders issued by BRP from time to time for each Product and available on the BRP dealer portal.

(d) "BRP Dealer Certification Program" means a point based program that includes a number of weighted criteria set by BRP and in which Dealer can earn points, and from such points incentive rewards and recognition, based upon a series of scaled performance indexes.

(e) "Dealer Location" means the premises used by Dealer for the Dealer Operations as set forth in Addendum A of this Agreement.

(f) "Dealer Operations" means all activities of Dealer relating to the promotion, sale, warranty, service of Products and all other activities of Dealer pursuant to this Agreement.

(g) "Dealer Owners" means the persons or entities who have beneficial or record ownership of Dealer, as well as any other person or entity who acquires or succeeds to any beneficial interest or record ownership in Dealer in accordance with the provisions of this Agreement.

(h) "Dealer Primary Market Area" or "PMA" means an assigned, non-overlapping geographical area designated by BRP in its sole discretion in which Dealer is responsible for retailing, servicing, and otherwise representing Products to a collection of past, current and potential consumers. BRP may designate a PMA, for each Product, by sending a notice to Dealer. BRP may modify, alter or adjust Dealer's PMA at any time.

(i) "Manufacturer" means Bombardier Recreational Products Inc.

(j) "Operation Standards" means the BRP Dealer Operation Standards issued by BRP to its BRP dealers, including any replacements, amendments, revisions or additions issued during the Term of this Agreement. BRP may review or modify the Operation Standards, at any time.

(k) "PAC" means the BRP parts, accessories and clothing specifically related to each Product line.

(l) "Policies" means all policies, procedures, programs, guides, manuals, technical specifications and terms and conditions issued by BRP to its dealers from time to time, including without limitation the Warranty Service Guide. BRP may review or modify the Policies at any time.

(m) "Products" means the Vehicles, together with PAC, that are covered by this Agreement, as set forth in Paragraph 1 (c) of the BRP US Inc. Dealer Agreement.

(n) "Service" means all work performed on Products including, without limitation, set-up, warranty work, maintenance, repair work, inspection, safety campaigns and modification services.

(o) "Share of Wallet" means the share of the annual revenue generated by each major OEM to the Dealer gross annual revenue.

(p) "Term" means the term of this Agreement set forth in Section 5 of the BRP US Inc. Dealer Agreement.

(q) "Trademarks" means any trademark, service mark or trade name now or any other time hereafter used or claimed by the Manufacturer or BRP.

(r) "Vehicles" means the BRP vehicles that are covered by this Agreement, as set forth in Paragraph 1 (c) of the BRP US. Inc. Dealer Agreement.

(s) "Warranty Service Guide" means the BRP Warranty Service Guide issued and updated by BRP from time to time.

## 2. Purchase of Products and Delivery

(a) Orders. Dealer shall order Products from BRP in such quantities and assortment as are necessary to fulfill Dealer's responsibilities under this Agreement. Such Dealer's orders of Products ("Orders") shall be sufficient to achieve adequate market penetration, to maintain an adequate inventory of Products and to meet its sales responsibilities under Paragraph 5 (a). Dealer shall place Orders in accordance with the ordering process established by BRP. BRP may cancel, accept or reject, in whole or in part, or decrease quantities in any Order without any liability to Dealer. BRP will notify Dealer of any changes to its Orders.

(b) Product Changes. The Manufacturer may discontinue the manufacture or sale of any Products or change the specifications, materials, design, color or appearance or add improvements to any Product or add Products at any time, and as a result, BRP reserves the right to discontinue the distribution of any Products or to distribute such modified Products all without notice to Dealer and without incurring any liability or obligation to Dealer or Dealer's customers with respect to Products previously ordered or purchased by Dealer or otherwise.

(c) Cancellation of Orders. Dealer may not cancel, change, or refuse delivery of any Products, or return ordered Products to BRP without BRP prior authorization. Dealer shall be subject to cancellation fees for such conduct as set forth in the Dealer Binder. Dealer shall also reimburse BRP for any costs incurred in returning Products to BRP. No Products may be returned unless they are unused and resalable, in accordance with BRP's applicable Policy. The fees or costs referenced in this Paragraph are a reasonable reimbursement for any loss BRP suffers from such cancellations, refused deliveries, changed orders or returns, and are not a penalty.

(d) Delivery. Dealer shall accept delivery of Products according to the prevailing shipping schedule as set forth in the Dealer Binder or in the Order. All delivery dates agreed upon by the Parties are tentative, notwithstanding any terms contained in any Order or other communication by either Party. BRP shall not be in breach of any duty to Dealer if it fails to meet such delivery dates for any reason. BRP may ship Orders as Products become available and in advance of the expected delivery date upon notice to Dealer. Dealer shall have equipment and facility for unloading Products. Dealer may receive delivery of Products off-site, provided Dealer obtains BRP's prior written consent.

(e) Shipment and Risk of Loss. All shipment of Products shall be delivered as per INCOTERMS® 2010 ICC "CPT Destination, risk at origin" for the applicable Products. However, BRP will select and contract the carrier for carriage and transport charges will be invoiced to Dealer by BRP. Transfer of risks will remain as per "FCA BRP's factory or BRP's selected shipping point of origin". The title transfer of Products will take place upon delivery to the carrier at BRP's factory or BRP's selected shipping point of origin.

3. **Price, Payment and Financial Requirements**

    (a) <u>Price.</u> Dealer shall purchase Products at such prices, taking into account such discounts, terms and conditions, as may be established by BRP from time to time. All sales are subject to availability of Products, to the provisions of this Agreement and to the Operation Standards and Policies, including without limitation BRP's current general sales terms and conditions. Unless otherwise stated by BRP, prices do not include sales, use, excise or other tax which shall be a separate charge paid by Dealer, as applicable. Dealer shall pay the price in effect on the date of shipment, regardless of when the Order was submitted or accepted. BRP may change Product prices, terms, Policies and conditions of sale upon notice to Dealer.

    (b) <u>Payment.</u> The purchase price for Products shall be paid in accordance with the terms and conditions set forth on the invoice at the time of shipment or as otherwise provided in the Operation Standards and Policies.

    (c) <u>Financial Arrangements.</u> BRP will not extend credit to Dealer or finance Dealer's purchase of any Product. Dealer shall make financial arrangements for the payment of Products with any financial institution of Dealer's choice, if such financial institution and the terms of its arrangements to finance Dealer are accepted in advance in writing by BRP. These financial arrangements must allow Dealer to (i) place Orders of Products sufficient to meet its responsibilities under this Agreement, (ii) pay for the purchase of Products and (iii) accept delivery of Products when available. BRP may pre-approve floor plan and financial arrangements with one or more financial institutions and may provide that information to its Dealers from time to time. Products must be fully paid to BRP prior to shipment. This Agreement will not become effective unless notice of final approval of Dealer credit is received by BRP and those arrangements have been accepted in writing by BRP. Acceptance of an Order or signing of this Agreement by BRP will not constitute acceptance of Dealer's financial arrangements. Dealer will receive separate written notification in the event that its financial arrangements for payment of Products are no longer acceptable to BRP.

    (d) <u>Unauthorized Changes to Financial Arrangements.</u> BRP reserves the right to terminate or discontinue any shipment or delivery of Products and to stop delivery of any Products already in shipment immediately and without notice to Dealer if: (i) the financial arrangements for payment of Products are discontinued, interrupted or curtailed, (ii) BRP believes that its ability to obtain payment for its Products is insecure or (iii) the financial situation of Dealer has otherwise deteriorated. Any such cessation of shipment or delivery of Products shall not constitute a termination of this Agreement or a substantial change in the competitive circumstances of this Agreement. BRP may recommence shipment or delivery of its Products if all the reasons for termination or discontinuance of shipments stated above are cured within thirty (30) days from notification by BRP. If any of the situations stated above is not cured within the required delay, BRP may, at its sole discretion, terminate this Agreement.

    (e) <u>Credit Reports.</u> Dealer authorizes BRP or its agent to run a credit report on Dealer, Dealer Owner(s) and any Dealer affiliate(s) in connection with this Agreement or in connection with BRP's evaluation of Dealer's performance under this Agreement. Dealer authorizes BRP to disclose such credit report in accordance with Paragraph 11 (c).

    (f) <u>Subrogation.</u> Upon termination or expiration of this Agreement, credits due to Dealer from BRP for any amount, including credits for warranty work, parts, returned Products or other credits shall be promptly paid. Dealer's right to receive payments for any such credits shall be subrogated to the right of any financial institution that has provided credit or financing for Dealer's acquisition of Products. Dealer hereby authorizes BRP to notify

any such financial institution of the amount of such credits upon reasonable demand and reasonable proof of the right of subrogation by such institution. Dealer's right to receive payment for any such credits is also subject to the restocking charges and rights of offset set forth in Section 16.

(g) _Insurance._ Dealer shall obtain and maintain at its sole cost and expense throughout the Term and also for two years after the expiration or termination of this Agreement, customary property, theft and comprehensive commercial general liability insurance from a reputable solvent insurance company. This insurance shall cover Dealer facility, fixtures, equipment and all other property of Dealer for the full value thereof and shall not have a limit of less than two million dollars ($2,000,000 USD) per occurrence and in the aggregate. Such insurance shall name BRP, its parents, its affiliates, and their respective directors, officers and employees as additional insured against any and all claims, demands, causes of action, or damages including reasonable attorney's fees for Dealer Operations performed by Dealer. Dealer shall provide a certificate of insurance evidencing such coverage upon BRP request.

## 4.  Reporting of Shortages or Defects

Dealer must inspect all Products immediately upon arrival. Dealer shall make all claims for shortages and damaged Products at time of delivery and shall forward this notification to BRP within seven (7) days after receipt of shipment, as described in the Operation Standards and Policies, including without limitation the Warranty Service Guide. Failure of Dealer to make said notification shall constitute a waiver of any such claim.

## 5.  Dealer Responsibilities

(a) _Dealer Sales Responsibilities._ Dealer shall devote its best efforts to actively and adequately promote, display, sell at retail a full-line of only those Products it is authorized to sell under this Agreement. Dealer shall meet sales performance goals satisfactory to BRP and agrees that meeting and maintaining such sales performance is a material condition to BRP entering into and continuing this Agreement. BRP may evaluate whether Dealer is meeting its sales goals based on criteria determined by BRP in its sole discretion. By way of example only, such criteria may include the following: the volume of Dealer sales of Products as compared to competitive products in Dealer's PMA or market area; the volume of Dealer's sales of Products as compared to other dealers of Products; the actual sales volume of the Products by Dealer as compared to the annual sales performance goals established by BRP for Dealer; the trend over a reasonable period of time of Dealer's sales; and the volume of Dealer's sales of Products as compared to Dealer's agreed goals. If Dealer handles brands which are competitive with the Products, Dealer shall afford to the sale of the Products either as much effort as Dealer gives to any direct competitive products handled by Dealer or efforts in proportion to the Share of Wallet that the Products represent, whichever is greater.

(b) _Dealer Location._ Dealer shall maintain, at the Dealer Location, sales and Service facilities that are at all times satisfactory and acceptable to BRP and that meet the requirements set forth in the Operation Standards and Policies including, without limitation, requirements for the size or square footage of the facility, the appearance of the facility, signage, Product display and business hours. Dealer shall make such alterations, improvements and upgrades to the Dealer Location as BRP may specify from time to time or in agreement(s) entered into with Dealer. Dealer hereby grants to BRP permission to inspect and photograph all parts of the Dealer Location to ensure compliance with this Agreement. Dealer shall execute, upon request from BRP, a report of the Dealer Location or other document specified by BRP, which may include, without

limitation, a description of the Dealer Location and a comparison with the requirements set forth in the Operation Standards and Policies.

(c) <u>Pre-Delivery Responsibilities.</u> Dealer shall assemble, set-up, test and inspect Products to ensure that they are in proper operating condition prior to delivery to any retail customer. Dealer agrees that it will not deliver to anyone, other than another authorized BRP dealer, any Products which are either in shipping crates, or not fully set-up, Serviced, and that have not successfully passed the pre-delivery inspection in accordance with the Operation Standards and Policies, including without limitation the BRP Pre-Delivery Inspection Checklist and the Warranty Service Guide. Dealer agrees to deliver Products and review their features with each retail customer in person. Dealer's responsibilities to properly set-up, test and inspect Products shall survive the termination or expiration of this Agreement.

(d) <u>Service of Products.</u>

    (i)   Dealer shall provide to purchasers of Products the terms of the applicable BRP warranty, including any territorial limitations to warranty coverage. After delivery of any new and unused Vehicle(s) to the customer, Dealer shall promptly and accurately file electronically with BRP true and complete warranty registration information, in accordance with the Operation Standards and Policies, including without limitation the Warranty Service Guide. Subject to applicable law, BRP may utilize the information provided by Dealer for any purpose including, without limitation, establishing warranty protection, providing essential information in the event of a safety campaign and providing BRP with useful marketing information.

    (ii)   Dealer shall perform promptly, any necessary Service including all extended warranty services pursuant to any applicable BRP extended service contract owned by the consumer. Such Service shall be performed without charge to retail customer when prescribed by BRP. As soon as informed, Dealer shall not sell any Product that is affected by a safety campaign until modifications have been duly performed on the Product, the whole as instructed by BRP. Dealer shall be responsible for, and hold BRP harmless from, any costs or other damages incurred by BRP as a result of any failure by Dealer to comply with this Paragraph.

    (iii)   Dealer shall process warranty claims on Products in accordance with the procedure set forth in the Operation Standards and Policies, including without limitation the Warranty Service Guide, BRP instructions and technical publications. When Service is made on Products, only replacement parts approved by BRP shall be used. Dealer shall not sell or offer for sale or use in the Service of any Products, as a genuine new BRP part, any part that is not in fact a genuine new BRP part.

    (iv)   Dealer shall not refuse to provide Service to a customer for the sole reason that the Product was purchased from another dealer. Dealer shall assume sole responsibility for the workmanship of any Service performed by its employees or representatives, and shall not hold BRP responsible in any way if any failure or damage is caused to the Products as a direct or indirect result of their acts or omissions including but not limited to Dealer's failure to perform Service as required.

    (v)   All Service shall be provided only by Dealer and its employees. Dealer shall perform all Service in accordance with the Operation Standards and Policies, including without limitation the Warranty Service Guide, BRP instructions and technical publications. Dealer agrees that performing Service in a manner satisfactory to BRP is a condition to BRP entering into and continuing this Agreement. BRP reserves its

right to evaluate the Dealer's Service in accordance with the Operation Standards and Policies, including without limitation the Warranty Service Guide.

(e) <u>Dealer Staff and Training.</u> Dealer shall employ, at all times, adequate numbers of qualified employees trained in sales, Service and customer satisfaction in order to meet the anticipated demands of the market served by Dealer, the whole as set forth in the Operation Standards and the Policies. Dealer shall ensure that each of its sales employees and Service technicians complete the mandatory training programs offered or sponsored by BRP. Dealer shall be responsible for all out-of-pocket expenses incurred by such personnel, including, without limitation transportation and lodging.

(f) <u>Tools and Equipment.</u> Dealer shall maintain, at all times, adequate tools, Service equipment, BRP manuals and Service publications in order to meet Dealer Service obligations under this Agreement. This obligation includes, without limitation, acceptance and payment of new tools, Service equipment, manuals and publications uniquely designed to meet the Service needs for newly introduced Products.

(g) <u>Advertising.</u>

   (i) Dealer shall develop, utilize and participate in various advertising and sales promotions of its dealership and the Products in a manner consistent with the terms of the Operation Standards and Policies in order to fulfill its responsibilities for selling, promoting and advertising Products set forth in the Operation Standards and Policies. To assist Dealer in fulfilling Dealer advertising and promotion responsibilities, BRP may develop and offer various advertising and sales promotion Policies to promote the sale of Products for the mutual benefit of BRP and Dealer.

   (ii) In recognition of the need to maintain the highest standards of ethical advertising and business practice, Dealer shall avoid in every way any deceptive, misleading, confusing or illegal advertising or business practice or advertising that is or might be detrimental to the Products, BRP, its Trademarks or the public.

(h) <u>Data Transmission Systems.</u> Dealer shall maintain and utilize a computer system that permits direct communication between Dealer and BRP in the manner prescribed by BRP. Dealer shall submit Orders and Order changes for Products, warranty registrations, claims for warranty reimbursement, inventory information, traffic and retail sales information, and such other information as BRP may designate, through the BRP designated systems.

(i) <u>Dealer Management System.</u> Dealer shall utilize a BRP approved dealer management system and, subject to applicable law, shall allow BRP to access selected information, the whole as set forth in the Operation Standards and Policies.

(j) <u>Compliance with Law.</u> Dealer shall maintain all necessary licenses and permits, and comply with all federal, state and local laws and regulations applicable to the Dealer Operations and respect all laws and regulations pertaining to the protection of the environment. Dealer is responsible for all local, state and federal or other applicable taxes and tax returns related to Dealer business and holds BRP harmless from any related claims or demands made by any taxing authority. Dealer shall collaborate and execute any document submitted by BRP in order to obtain Dealer's tax status from relevant authorities regarding, without limitation, its payment of tax returns and payroll deductions.

(k) <u>Restrictions on Sales of Products</u>.

    (i) Dealer shall not directly advertise or directly or indirectly sell Products, whether new, current or non-current, in another country than the one in which it was last invoiced, or sell Products to any person who intends to sell or distribute Products outside the country in which it was last invoiced.

    (ii) Dealer acknowledges and agrees to sell Vehicles only to customers residing in the country in which the Vehicles were last invoiced, for personal use or primary commercial use other than for resale, as set forth in the Operation Standards and Policies. Furthermore, Dealer shall not knowingly assist others in importing or exporting Vehicles inside or outside the country in which the Vehicles were last invoiced.

    (iii) Dealer shall not establish directly or indirectly an associate or sub-dealer for the sale, Service or display of Products and shall not wholesale, bulk sell or otherwise transfer Products to any person, business or other dealer except those dealers authorized by BRP to sell and Service the Products within the U.S.A. However, Dealer may sell parts to repair shops for repair use only and not for resale. Dealer agrees that any breach of this Paragraph would cause irreparable harm to BRP and injunctive relief against a violation would be appropriate and reasonable.

(l) <u>Records.</u> Dealer shall maintain the following records for a minimum of seven (7) years: (i) all proof of sales of Products or Services, (ii) all warranty records, (iii) profit and loss statements, (iv) tax returns of Dealer dealership; and (v) all records relating to rebates and promotional Policies. Dealer shall make such records available to BRP upon BRP request.

(m) <u>General Obligations.</u> Dealer shall perform all other responsibilities and obligations expressed in this Agreement. Dealer shall comply with the Operation Standards and all Policies, including but not limited to those related to warranty registration, sale of Products, minimum advertised price for BRP vehicles and PAC and the export of Products. Failure to comply with the Operation Standards or any Policy may lead to sanctions including, without limitation, the termination of this Agreement.

## 6. Safety

Dealer shall comply with the following safety requirements:

(a) <u>Safety Campaigns.</u> Dealer shall perform all Product safety campaigns as instructed by BRP.

(b) <u>Products and Labels</u>. Dealer shall inspect all Products upon arrival and at reasonable intervals when in stock, to ensure all safety and compliance labels and hangtags, as BRP may require, are affixed to each Product and that each label is located in the appropriate place on the Product. If a label or hangtag is misplaced, missing, or not in the appropriate language, Dealer shall correctly affix such label or hangtag in the appropriate place on the Product. Any discretionary labels Dealer wishes to affix to a Product must be placed so as not to detract from any safety and compliance label and hangtags.

(c) <u>Regulatory Changes</u>. Dealer recognizes and agrees that BRP may install or require Dealer to install, on Products, any additional equipment or accessory required by any applicable federal, state or local law, rule or regulation, for safety considerations or other mandatory requirements.  Such regulatory change shall be made at no cost to BRP. Dealer declares and agrees that any modification of requirements pertaining to the sale

or servicing of the Products required by any applicable federal, state or local law, rule or regulation, shall be incorporated herein by this reference and shall become the responsibility of Dealer.

(d) <u>Disseminate and Display Safety Materials</u>. Dealer shall disseminate or display, as directed, all point-of-purchase Product safety materials supplied by BRP and any Product trade association, including without limitation literature, videos and posters.

(e) <u>Advertisements</u>. Advertisements and promotional materials used by Dealer, including without limitation in social media initiatives, shall depict practices in conformity with BRP safety guidelines and industry recommendations.

(f) <u>No Inconsistent Safety Representations</u>. Dealer shall not make inconsistent safety representations and shall not contradict the safe practices related to the Products recommended by BRP. Dealer shall only offer or sell modifications or accessories which preserve the safety of the users.

(g) <u>Safety Training</u>. Dealer recognizes that knowledge saves life and that it shall ensure that all its employees are appropriately trained and informed on the safe use of the Products. Dealer shall undertake to have its employees complete safety training programs offered by BRP or industry associations if BRP requires so. Dealer shall be responsible for all out-of-pocket expenses incurred for attending such training programs, including, without limitation, transportation and lodging.

(h) <u>Customers of Can-Am ATV</u>. If Dealer is appointed by BRP to sell Can-Am all-terrain vehicles, Dealer recognizes and agrees that it shall not market, sell or offer to sell Can-Am all-terrain vehicles to customers who are under the age referred on the warning labels on such Product. BRP may perform undercover investigations and if, through an undercover investigation or otherwise, Dealer or its employees are found to infringe this Paragraph, BRP may, at its sole discretion: (i) charge Dealer a fee of five hundred dollars ($500 USD) and any other amount connected to BRP's investigation cost for each follow-up investigation that BRP deems appropriate to perform, (ii) charge such fees and impose any other sanctions or obtain compensation for any other damages as BRP may deem appropriate and (iii) terminate this Agreement.

(i) <u>Potential Safety Issues</u>. Dealer shall report promptly to BRP any accident or incident which may involve a potential safety issue and to collaborate with BRP during any safety investigation.

**7. Product Warranty**

BRP makes no representations or warranties, expressed or implied, with respect to the products either for itself, or where applicable for the Manufacturer, except as may be provided in a current standard written or printed limited warranty offered by the Manufacturer to the retail customer with respect to one or more of the Products. BRP reserves its right to amend or rescind the applicability of such warranty at all times. The Products sold by BRP to Dealer shall carry no warranties other than the warranties of the Manufacturer. It is understood and agreed that all warranties of BRP, either expressed or implied, including any implied warranty of merchantability and any implied warranty of fitness for a particular purpose, are hereby excluded and disclaimed. Neither Dealer, nor any other person, shall have authority to bind BRP to any other representation or warranty. Dealer shall indemnify BRP for all losses, damages, liabilities, reasonable attorneys' fees, or expenses which BRP may incur as a result of, or in connection with, any claim under such warranty by reason of any act or omission or different warranty given by Dealer, Dealer's employees or agents. BRP neither assumes nor authorizes anyone to assume for it any other obligation or liability in connection with its Products.

8. **Trademarks and Name**

(a) <u>Use of Trademarks and Name.</u> BRP hereby grants to Dealer the license to use the Trademarks at Dealer's Location and on items such as, without limitations, Dealer's sign, Dealer's stationery and Dealer marketing material. Dealer, Dealer's officers, Dealer's owners and Dealer personnel must not make any other use of the Trademarks that may be confusingly similar to it. Accordingly, and not by way of limitation, the Trademarks may only be used by Dealer at its present and precise Dealer Location. Dealer shall not use the words "Bombardier", "Bombardier Recreational Product", "BRP", "Can-Am", "Sea-Doo", "Ski-Doo", or any combination of such words, or any word or words confusing or similar thereto or any other Trademark as the whole or any part of its Dealer corporate or domain name. Upon prior written consent of BRP and during the Term only, Dealer may use such Trademark in connection with Dealer's trade or business name, which permission may be revoked at any time or withheld at BRP sole discretion. When requested by BRP, Dealer shall provide BRP with an updated list of all domain names used containing Trademarks. Upon termination or expiration of this Agreement, Dealer rights of use as provided herein shall be automatically revoked unless otherwise agreed to in writing by BRP and if requested by BRP, Dealer shall promptly assign to BRP any rights that Dealer has in any domain names or websites containing Trademarks.

(b) <u>Ownership and Licensing.</u> Dealer acknowledges that BRP and its affiliated companies are the sole and exclusive owner or licensee of the Trademarks. Dealer further acknowledges that Dealer right to use said trademarks is strictly limited to such use as contemplated by this Agreement and inures to the benefit of BRP and not of Dealer. Dealer further acknowledges that it is not authorized to license or sub-license or otherwise permit the use of Trademarks without BRP prior written consent. Dealer agrees and covenants not to contest in any way the validity of any rights of BRP or its affiliated companies in such Trademarks or names.

(c) <u>Protection.</u> The protection of the Trademarks and their distinguishing characteristics is important to BRP. Dealer must immediately notify BRP of any notice of infringement received by Dealer or other challenge to use of any Trademark, or any other claims of rights to any trademark identical or confusingly similar to the Trademarks. Dealer may not communicate with any person other than BRP regarding any such matter. BRP is not required to take any affirmative action when notified of any infringement, challenge, use or claim relating to the Trademarks, and may take whatever action BRP considers appropriate. BRP has the sole right to control any administrative proceeding or litigation involving the Trademarks. Dealer must fully cooperate with BRP in such matters, and must sign any and all documents BRP believes are necessary to obtain protection for the Trademarks. BRP's decision as to the prosecution, defense and settlement of any dispute relating to the Trademarks will be final. All recoveries made as a result of disputes with third parties regarding the Trademarks will be for the account of BRP.

(d) <u>After the End of the Agreement.</u> If any such Trademarks are used in signs, advertising or in any other manner by Dealer, Dealer shall, upon termination or expiration of this Agreement, immediately discontinue, at its expense, all such use and display thereof. Thereafter, Dealer shall not use, either directly or indirectly, any such Trademarks or any other marks so resembling such Trademarks as to be likely to cause confusion as to the business relationship between the Parties or mistake to deceive the public.

(e) <u>Liquidated Damages.</u> In addition to injunctive relief provided in Section 23 (e), if Dealer shall refuse or neglect to comply with the provisions of this Section 8, Dealer shall pay to BRP as liquidated damages and not as penalty, BRP costs, attorney's fees, and all other

expenses incurred by BRP in connection with any legal action to require Dealer to comply therewith.

9. **Reports**

(a) <u>Financial Reports.</u> Dealer shall provide to BRP, on a monthly, quarterly or annual basis as BRP may request, financial reports or any other relevant operation reports giving BRP a complete, true and accurate report of Dealer Operations for the time periods requested. Dealer shall provide all Dealer, Dealer Owners and Dealer affiliates financial reports in the manner prescribed by BRP.

(b) <u>Audit.</u> Dealer shall also allow BRP to audit all information and documentation related to the Products, including without limitation Dealer's financial records, at Dealer's Location, upon receipt of a twenty-four (24) hour notice.

10. **Relationship with BRP**

For all purposes, Dealer is an independent business, not an agent or employee of BRP. The term "partners" as may be commonly used by either Party shall not constitute the establishment of a legal partnership or give rise to fiduciary duties by either Party to the other. Dealer also agrees that this Agreement does not constitute the grant of a franchise or franchise rights, and acknowledges that it has not been required to, nor has it paid any franchise fee in connection with the execution of this Agreement. Dealer must conduct Dealer Operations on its own behalf and for its own account. Dealer has no power or authority to act for BRP. Dealer shall have the sole right to determine the manner in which Dealer performs its responsibilities under this Agreement, except as otherwise expressly provided in this Agreement.

11. **Confidential Information**

(a) <u>Confidential Information.</u> Dealer shall strictly maintain the confidentiality of all non-public information and documents provided to it by or on behalf of BRP, or to which it has access through BRP, including information and documents in any form or format now or hereafter developed regarding product development, new Products, production and delivery schedules, pricing, marketing plans, methods of accessing internal information (electronically or otherwise) and other proprietary matters as well as any retail sales data coming from industry associations such as the Motorcycle Industry Council. Dealer shall not disclose any such confidential information or documents to any other person, including to any competitors or customers. Dealer shall take all necessary steps to ensure that Dealer's employees, officers, agents, shareholders or partners maintain the confidentiality of such information, and not disclose it to any other party during or after the expiration or termination of this Agreement.

(b) <u>Consulting Services.</u> Neither Dealer nor any of its employees, agents, directors and officers shall provide consulting services or assistance to any person or entity or any attorney or agent for such person or entity related to any cause of action, claim dispute, litigation, arbitration or other action involving BRP products. Consulting services and assistance which Dealer is prohibited from providing pursuant to this Section include, but are not limited to, services as an expert witness, advisor or counselor in connection with litigation or claims against BRP arising out of or related to the use, manufacture, design, production, marketing or sale of any Products, parts components, technical specifications, or any similar activities which would assist any such person or entity or its attorney or agent in prosecuting or pursuing any claim or dispute which would adversely affect BRP or its products, unless required by law.

(c) <u>Disclosure by BRP.</u> Notwithstanding the above, Dealer acknowledges and agrees that BRP may disclose confidential information on Dealer to its parents, subsidiaries, divisions, affiliates, related entities and shareholders and to any business partner, including without limitation any pre-approved financial institution.

(d) <u>Privacy.</u> Dealer shall comply with BRP's processes and requirements concerning the privacy and confidentiality of consumer data and personal information as set forth in the Operation Standards and Policies from time to time. This may include providing notices to Dealer's customers concerning BRP's policies and procedures in the form prescribed by BRP and obtaining required customer consents.

**12. <u>Change in Dealer Ownership</u>**

(a) <u>Procedure.</u> Dealer shall give BRP prior written notice, complete explanation of any and all proposed transfer or sale of its principal assets or of any proposal of change in Dealer Owner(s), officer(s) or director(s) or in its approved ownership structure and shall submit all information required by BRP to evaluate the proposal. No such notice or change may be made or shall be effective against BRP unless and until BRP gives its prior written approval. Dealer acknowledges that BRP cannot and will not begin to review the proposal until all such information has been submitted to BRP. In determining whether the proposal is acceptable, BRP will take into account factors including but not limited to, the willingness and proven capability or track record of the proposed Owner(s), officer(s) or director(s) to accept and comply with this Agreement, the Operation Standards and Policies, the ability of the proposed Owner(s), officer(s) or director(s) to meet BRP standards for capital or financial capability, the personal qualifications, the business experience, the demonstrated commitment to the full time on-site management of Dealer Operations and the proposal's effect on competition. In such evaluation, BRP may consult the proposed Owner(s), officer(s) or director(s) on any aspect of the transaction or their proposed dealership operations and Dealer shall hold BRP harmless for any such consultation or other discussions with the proposed Owner(s), officer(s) or director(s).

(b) <u>Approval by BRP.</u> Once Dealer has provided to BRP all applications and information reasonably requested by BRP to evaluate Dealer proposal, BRP will notify Dealer in writing within ninety (90) days (i) of BRP's approval or disapproval of the proposal by Dealer for transfer or sale of its principal assets or change of any Owner(s), officer(s) or director(s) or (ii) of BRP's intention to exercise its right of first refusal under Paragraph 12 (d). Dealer understands and agrees that BRP's approval of a proposed Owner(s), officer(s) or director(s) who otherwise meets BRP reasonable and consistently applied requirements will be conditioned upon Dealer meeting all outstanding commitments and obligations to BRP, including without limitation the payment by Dealer in full of all amounts owed to BRP and compliance with the Operation Standards and Policies. BRP's approval of Dealer's proposal may be conditioned on the proposed Owner(s), officer(s) or director(s) agreeing to provide existing or new facilities for their BRP operations in compliance with the Operations Standards and Policies.

(c) <u>Publicly-Owned Corporation.</u> Except for BRP or Bombardier Recreational Products Inc., no publicly-owned corporation may, directly or indirectly, in whole or in part, own or operate any BRP dealership, unless otherwise permitted in writing by BRP.

(d) <u>Right of First Refusal.</u> Whenever Dealer proposes to transfer its principal assets or a majority change in the Owner(s), officer(s) or director(s), BRP shall have a right of first refusal to purchase the dealership assets related to BRP and to cancel this Agreement and all rights granted to Dealer, except if a proposed transfer has been approved by BRP under a succession plan pursuant to Paragraph 13. BRP right of first refusal is not dependent upon whether the proposed buyer is qualified to be a dealer or an Owner,

officer or director. BRP may elect to exercise its right of first refusal by written notice to Dealer within sixty (60) days after Dealer has provided to BRP all applications and information reasonably requested by BRP to evaluate Dealer's proposal. BRP may assign its right of first refusal to any third party it chooses and may disclose the terms of any pending buy/sell agreement between Dealer and the proposed Owner(s), officer(s) or director(s) and any other relevant Dealer performance information to any potential assignee.

### 13. Succession Plan

Dealer shall provide, upon request by BRP, either (i) a written succession plan in the event of death or incapacity of any Dealer Owner(s), officer(s) or director(s) or (ii) a written plan detailing such person's plans for eventual retirement and the proposed succession to such person's interest. All such plans shall be subject to BRP's prior written approval.

### 14. Death or Incapacity of Dealer Owner

(a) <u>Notification.</u> Dealer shall give BRP immediate notice of the death or incapacity of any of its Dealer Owner(s), officer(s) or director(s). As used in this Agreement, "incapacity" shall refer to a lack of ability to perform professional obligations or functions due to a physical or mental ailment.

(b) <u>Succession.</u> Notwithstanding Paragraph 16 (e) (ii) (k), in the event of death or incapacity of any of Dealer Owner(s), officer(s) or director(s), BRP will not terminate this Agreement if:

   (i) The interest in Dealer of such deceased or incapable Dealer Owner(s), officer(s) or director(s) passes directly as specified in any succession plan approved in advance in writing by BRP; or

   (ii) Within thirty (30) days after the death or incapacity of such Dealer Owner(s), officer(s) or director(s), the Dealer gives written notice to BRP of the qualified individual proposed by the Dealer as a successor. That notification shall include information about the proposed successor's personal and financial information, personal and business qualifications and any other information requested by BRP. The nomination of the proposed successor shall not be effective unless accepted in writing by BRP. In the event that BRP determines that the proposed successor does not meet the qualifications and other requirements necessary to become an Owner, officer or director, the Agreement will be terminated, unless the remaining Owner(s), officer(s) or director(s), if any, can prove to BRP satisfaction, that the Dealer can maintain at least the same level of Dealer Operations as before the death or incapacity of one of the Owner, officer or director and can meet all the requirements under this Agreement.

### 15. Renewal, Termination or Non-renewal

(a) <u>Expiration.</u> This Agreement shall automatically expire at the end of the Term unless otherwise renewed with respect to any or all of the Products.

(b) <u>Mutual Termination.</u> This Agreement may be terminated as to one or more of the Products, at any time, by mutual agreement of the Parties.

(c) <u>Termination by Dealer.</u> This Agreement may be terminated by Dealer as to one or more of the Products at any time, by giving BRP thirty (30) days prior written notice of such termination.

(d) <u>Renewal/Non-renewal</u>. If BRP decides to renew this Agreement as to one or more of the Products, it will do so by giving Dealer written notice, at least thirty (30) days prior to expiration of this Agreement, of its intention to renew this Agreement. Dealer must consent to such renewal in writing by executing a current dealer agreement within thirty (30) days thereafter. BRP offer to renew shall occur only in the form of a letter signed by a duly authorized representative of BRP. Nothing shall prohibit BRP from offering to renew upon terms and conditions different from the terms and conditions of this Agreement. If for any reason this Agreement is not renewed in writing, it will automatically expire by its terms without the need to give a written notice to the Dealer, as set forth in Paragraph 15(a).

(e) <u>Termination by BRP</u>.

    (i) <u>Immediate Termination.</u> This Agreement may be immediately terminated by BRP as to one or more of the Products upon the occurrence of any of the following:

        a. Dealer becomes insolvent, or a petition in bankruptcy is filed, or Dealer makes a general assignment for the benefit of creditors, or a receiver, an assignee, referee or a trustee is appointed for any significant portion of Dealer's property, or a petition for dissolution or for an assignment or for the reorganization of its affairs is filed;

        b. There is any finding or charge by a governmental agency, or court, or a settlement, or plea, that Dealer, Dealer Owner(s), officer(s), director(s) or any of Dealer's employees or agents, committed a misdemeanor, or unfair or deceptive business practice, or a felony, which, in BRP sole business judgment, may affect the reputation or interests of BRP in a materially adverse manner;

        c. Dealer submits to BRP any false application, registration, claim or report, including without limitation false warranty claims, transfers of Orders for Products, reports of delivery, warranty registrations, allowance or rebate claims, payment or reimbursement claims or any other claims under applicable BRP Policies;

        d. The U.S. Consumer Product Safety Commission requires termination of Dealer due to Dealer's failure to respect safety obligations;

        e. Failure or inability by Dealer to comply with, adopt, promote or implement any safety program, material or procedure as required by BRP, or any other act or omission which may adversely affect the safety or reliability of the Products, the health or safety of the consumers and the public, the image or the reputation of BRP or its products;

        f. Imminent danger to the public health or safety.

    (ii) <u>Termination with thirty (30) days notice</u>. This Agreement may be terminated by BRP as to one or more of the Products, in its sole discretion upon sending of a written notice thirty (30) days prior to the effective date of the termination, based on any of the following grounds:

        a. Dealer enters into any agreement, collusion, understanding or contract, verbal or written, with any other party with the purpose of fixing prices of Products;

b.   Dealer engages in conduct which materially impairs the goodwill associated with Trademarks, including without limitation, making disparaging or defamatory remarks about BRP or the Products through any means or media whatsoever;

c.   Any other act or failure that impairs the purpose of the relationship created by this Agreement or any other act or omission that adversely affect the trust BRP puts into Dealer and in their business relationship;

d.   Failure of Dealer to act in good faith or in a commercially reasonable manner with BRP or with any third party, including without limitation other BRP authorized dealers;

e.   Disclosure of confidential information including but not limited to BRP prices or Policies to other dealers or any third parties including Dealer employees for whom such knowledge is not relevant to their position at Dealer;

f.   Failure by Dealer to conduct sales and Service operations for seven (7) consecutive days;

g.   There is, without BRP prior written approval, any change in Dealer Location, the sale or transfer of all or substantially all of Dealer's assets or Dealer Owner(s), officer(s) or Director(s) or otherwise in Dealer executive management, ownership or control;

h.   Representation for sales, promotion, advertising and/or sales by the Dealer as a new Product or any Product that has been used or operated for demonstration purposes or is otherwise a used Product;

i.   Dealer refuses to provide BRP with information it is required to provide under this Agreement, to timely provide sales, Service, or financial information upon demand, or to permit BRP to audit Dealer's accounts and records;

j.   Non-payment upon the agreed terms of any sum due to BRP by Dealer or from any financial institution that has provided financing to Dealer for Products or failure by Dealer to maintain financial arrangements adequate and acceptable to BRP for the payment of Products;

k.   Death or incapacity of any of the persons listed in Addendum C of the Dealer Agreement, unless the provisions of Section 14 have been satisfied;

l.   Violation of any Policy by Dealer;

m.   Dealer breaches in any material respect any other provision of this Agreement, including without limitation the provisions of Section 5, or acts to prevent BRP from exercising its rights under this Agreement. No provision of this Agreement that states or suggests that a particular breach is material is intended to imply that other breaches are not material.

(f)   <u>Transactions after Termination or Expiration.</u> Upon sending of a written notice of termination or non-renewal for any or all Product lines or after the date of the expiration of this Agreement, BRP shall have the right to cancel all pending Orders, whether previously accepted by BRP or not. Notwithstanding the foregoing, if BRP chooses to fill an Order, it shall not be obligated to fill any additional Orders. BRP shall not be precluded from changing the terms of any Order covered by this Paragraph. After termination or expiration of this Agreement, any act or verbal communication whatsoever, including but

BRP US INC. Dealer Agreement General Provisions 2013 – v.2

not limited to requests or acceptance of Orders by BRP, requests for sales projections, invitations to meetings, continuance or acceptance of any business transaction or processing of warranty claims, shall not be construed as a renewal of the Agreement nor as a waiver of its termination or expiration. However, any transactions subsequent to termination or expiration shall be governed by terms identical to the terms and provisions of this Agreement. No termination or expiration of this Agreement shall affect the liability of Dealer to BRP for the purchase price of any Products covered by this Agreement nor shall it affect the liability of either Party to the other for breach of the provisions of this Agreement.

(g) <u>Obligations upon Termination or Expiration</u>. Upon expiration or termination of this Agreement by either Party for any reason, Dealer will:

    (i) Immediately pay BRP all amounts that are due. Dealer and Dealer's guarantors shall also remain obligated under any agreements between Dealer, or them, and BRP or a financing institution;

    (ii) Promptly return to BRP or destroy, at its own expense, all BRP Service or other manuals and promotional and advertising materials (including, but not limited to, indoor and outdoor signs and logos) provided by BRP;

    (iii) Immediately cease, at its own expense, to represent itself as an authorized Dealer for the Product(s) for which this Agreement has been terminated or non-renewed, and therefore cease immediately to market, promote and distribute the involved Product(s) and cease any and all use of the respective Trademarks.

(h) <u>Repurchase of Inventory</u>. Upon termination or expiration of this Agreement, BRP shall have no obligation but shall have the option to repurchase any portion or all of the Products in Dealer's inventory.

(i) <u>Grounds for Termination</u>.  When BRP believes grounds exist for termination of this Agreement, BRP may in its sole discretion specify any of or all the grounds it believes exist for termination, whether or not other grounds may then exist or later come to exist. BRP shall not be precluded from later establishing that termination is also supported by additional grounds which were not set forth in BRP's original notice of termination.

(j) <u>No Waiver by Failure to Terminate</u>.  Should BRP be entitled to terminate this Agreement but fails to do so, such failure shall not be considered a waiver of BRP's right to terminate this Agreement.

**16. <u>Repurchase of Products, Restocking Charges and Credits Due</u>**

(a) <u>Repurchase of Products and Restocking Charges.</u> If BRP repurchases or otherwise reacquires any Products, including through a repurchase agreement with any financial institution, then the amount to be paid by Dealer to BRP as restocking charges shall be the amount voluntarily agreed upon between Dealer and BRP or, if no agreement is reached, the restocking charge as that term is defined in the Dealer Binder, the Operation Standards or the Policies.

(b) <u>Credits Due.</u> Credits due to Dealer for warranty work, parts, returned Products or any other credits shall be paid to Dealer as provided in this Agreement.  However, BRP may off set any amounts owed to Dealer by BRP against amounts Dealer owes to BRP.

17. <u>Limitation of Remedies</u>

    (a) <u>No Damages from Termination, Non-renewal or Expiration</u>. If this Agreement expires, is not renewed or is terminated, Dealer agrees that no compensation is due by BRP for goodwill, reputation, reimbursements or damages on account of the loss of prospective profits, or anticipated sales or on account of expenses, investments, inventory, leases, property improvements or any other commitment in connection with the business of Dealer.

    (b) <u>No Liability for Damages.</u> It is expressly understood that in no event and under no circumstances shall BRP ever be liable to Dealer or to any other person for consequential or incidental damages or in any amount greater than the purchase price of the Products, whether liability be predicated in tort, contract, strict liability theory, or any other theory.

18. <u>Indemnity</u>

Dealer shall defend, indemnify, and hold BRP and Manufacturer and their subsidiaries, and affiliates, and their officers, directors, agents, employees, shareholders, legal representatives, successors and assigns and each of them harmless from and against any and all claims, losses, damages, liabilities, judgments, and expenses relating to, or arising out of, (a) Dealer's Operations, (b) any breach of this Agreement by Dealer, or (c) any other act, omission or negligence by Dealer, Dealer's employees or agents. This provision applies to any act, omission or negligence including those related to sales, repairs, leases, rentals, loans and demonstration rides. This Section shall survive expiration or termination of this Agreement by any Party for any reason.

19. <u>Force Majeure</u>

BRP and Dealer shall not be responsible or liable for failure to perform their respective obligations under this Agreement because of any force majeure (defined as, without limitation, any governmental laws, regulations, orders, decrees or other governmental acts, wars, sabotage, communication line or power failure, plant shutdown or equipment failure, labor disputes or shortage, inability to obtain material, equipment or transportation, fire or any natural disaster (excluding lack of snowfall)). The Party unable to perform its obligations shall promptly give notice to the other Party, and the Party awaiting performance may, at its option, so long as such inability to perform continues either (i) obtain such performance at its own expense from other sources; and / or (ii) suspend its own performance. In addition, if such period continues for more than thirty (30) days, the Party who has not suffered the force majeure may, upon written notice to the other Party, elect to terminate the obligations for which the performance is no longer possible. Neither Party shall be liable to the other for any damages or other claims resulting from a force majeure under this Section.

20. <u>Notices</u>

Except where provided otherwise, all notices required or permitted by this Agreement shall be addressed to the recipient in writing, if to Dealer at the addresses stated in Addendum A of the Dealer Agreement, and if to BRP at the address specified by BRP from time to time, and shall be either hand delivered or sent to the other Party via email, sent by mail whether by first-class, certified, registered mail, or sent by a reputable private shipper. If such notice remains undelivered more than three (3) days after the date of the postal stamp showing on the envelope, the receipt date will be deemed to be the date of the postal stamp. Notices and invoices that BRP posts on the BRP dealer portal, are deemed to be proper notices and invoices under this Agreement for all purposes, and Dealer shall check for any such notices or invoices at least once each working day. When a notice is posted on the BRP dealer portal, the notice is deemed to be received by Dealer twenty-four (24) hours after posting.

BRP US INC. Dealer Agreement General Provisions 2013 – v.2

**21. <u>Counterparts, Signature</u>**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together will constitute one and the same instrument. A signature of a party transmitted in a scanned copy of the Agreement attached to an email or affixed to the Agreement by other electronic method such as by electronic document signature program shall constitute an original for all purposes.

**22. <u>Arbitration</u>**

Any controversy or dispute whatsoever between BRP and Dealer, whether arising under contract, statutory, tort or other law, including, but not limited to, any cause of action, claim, suit or demand by either Party, arising or allegedly arising from or relating to the terms, interpretation or enforcement of this Agreement, Dealer or BRP performance hereunder, or in any way related to the relationship between the Parties (collectively "Dispute"), shall be settled by mutual consultation between the Parties in good faith as promptly as possible. In the event an amicable resolution of any Dispute is not possible, such Dispute shall be governed by Florida law and submitted exclusively to arbitration for resolution in Orlando, Florida, before a single arbitrator mutually agreed upon by the Parties. If the Parties cannot agree upon an arbitrator, either Party may petition the circuit court for Orange County, Florida, requesting the court to appoint an arbitrator, which petition the other Party shall not oppose. Arbitration shall be conducted in accordance with the commercial arbitration rules and procedures of the American Arbitration Association except that full discovery shall be permitted and the Florida rules of civil procedure shall apply to discovery. The decision of the arbitrator shall be final and binding upon BRP and Dealer and no appeal shall be taken from such decision. BRP and Dealer each waive all rights to appeal the arbitrator's decision. The arbitrator shall have no authority to award punitive or exemplary damages. Arbitration shall be the sole and exclusive method of resolving any and all Disputes. The decision of the arbitrator may be entered in the circuit court for Orange County, Florida, or if the award is against Dealer, in any court which has jurisdiction over Dealer. Each Party shall bear its own attorney's fees and costs and the costs of its own expert witnesses. Each Party shall be responsible for one half of the arbitrator's fees, as well as any costs as may be mutually agreed upon such as translator and stenographer fees. This Section shall survive the termination or expiration of this Agreement.

**23. <u>Miscellaneous</u>**

    (a) <u>No Third-Party Rights</u>. This Agreement is not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this Agreement, except as provided in Section 18.

    (b) <u>Responsibility for Employees</u>. Dealer shall take full responsibility for its employees' strict compliance to this Agreement.

    (c) <u>Loans, Leases, Rentals or Demonstrators.</u> If Dealer loans, leases, rents or supplies demonstrator Products to any person or entity, Dealer does so as an independent business and at Dealer own risk and without any liability to BRP. Dealer shall give written notice to such person or entity that any such loan, lease, rental or demonstrator is provided by Dealer and not by BRP. Dealer should follow the guidelines contained in the Dealer Binder, the Operation Standards and the Policies.

    (d) <u>Consumer Information received from BRP.</u> BRP may provide to Dealer individual consumer information, including names and addresses of consumers who have obtained BRP products or services. Dealer shall not use or disclose any such consumer information obtained from BRP for any purpose other than to carry out its obligations

under this Agreement. Dealer shall maintain the security and confidentiality of all such consumer information in compliance with applicable privacy laws. Dealer also agrees that all consumer information obtained from BRP is the exclusive property of BRP. Upon the termination or expiration of this Agreement, Dealer shall promptly destroy all copies of such consumer information and cease using it for any purpose. BRP may establish Policies from time to time to carry out the purposes and intent of this provision.

(e) <u>Injunctive Relief</u>.   Dealer acknowledges that the remedy at law for any breach or threatened breach of the provisions of Sections 8 and 11 by the Dealer shall be inadequate, and that accordingly, BRP will, in addition to all other available remedies, be entitled to injunctive relief, without being required to post bond or other security and without having to prove the inadequacy of the available remedies at law.   Dealer agrees not to plead or defend on grounds of adequate remedy at law or any similar defense in any action by BRP against Dealer for injunctive relief or for specific performance of any of its obligations hereunder.   Nothing contained herein shall be construed as prohibiting BRP from pursuing any other remedies for such breach or threatened breach

(f) <u>Modification.</u> No modifications of this Agreement shall be effective unless it is documented and signed by Dealer and an authorized representative of BRP.

(g) <u>Modification Due to Other Laws or Regulations.</u> If any provision of this Agreement contravenes or is prohibited by the laws or regulations of the U.S.A. or of its States or other jurisdiction wherein this Agreement is to be performed, such provision shall be deemed to be modified only to the extent necessary to conform to such laws or regulations, and all other terms and provisions of this Agreement shall remain in full force and effect. The Parties agree that this Paragraph shall be interpreted as narrowly as lawfully allowed to carry out the full intent of the Parties as expressed by this Agreement.

(h) <u>Entire Agreement</u>. Unless expressly incorporated herein, this Agreement cancels and supersedes all prior written and unwritten agreements and understandings between the Parties pertaining to the matters covered in this Agreement. No obligations or agreements shall be implied from any of the terms and provisions of this Agreement. No representations or statements, other than those expressly set forth herein, were made or relied upon by the Parties in entering into and performing this Agreement. It is expressly agreed and understood that the following documents, are incorporated herein by reference and have the same binding effect as this Agreement: the Addenda to this Agreement, the Operation Standards, the Warranty Service Guide, the Dealer Binder, the BRP invoices, and all other Policies. In case of conflict, the order of precedence shall be: 1) Addenda to this Agreement; 2) this Agreement (including the General Provisions); 3) the Operation Standards; 4) the current Warranty Service Guide; 5) the other BRP Policies and documents.

(i) <u>Policies.</u> BRP reserves its right to issue from time to time new Policies or modify existing Policies without any prior notice to dealers. These Policies shall be communicated to Dealer by a way of a general communication made to all BRP dealers.   Once communicated, these Policies shall be incorporated herein and shall have the same binding effect as this Agreement.

(j) <u>Non-waiver.</u> The failure of any Party to enforce at any time any of the provisions of this Agreement or to require at any time performance of any of the provisions hereof, shall in no way be construed to be a waiver of such provisions, nor in any way affect the validity of this Agreement or any part hereof or the right of any such Party thereafter to enforce each and every provision of this Agreement.

# EXHIBIT C



# BRP DEALER OPERATION STANDARDS

Updated May 2019

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 48 of 60

# Table of content

## Contents

| | | |
|---|---|---|
| (I) | INTRODUCTION | 3 |
| 1. | BUSINESS OPERATIONS | 4 |
| 2. | UNIT SALES | 4 |
| 3. | ACCESSORIES AND/OR CLOTHING AND RIDING GEAR | 5 |
| 4. | SERVICE | 6 |
| 5. | FACILITY | 6 |
| 6. | ADVERTISING | 7 |

**BRP Dealer Operation Standards**

(i)    **Introduction**

The BRP Dealer Operation Standards document clearly identifies the minimum standards that a BRP dealer is required to meet on subjects such as business operations, unit sales, parts, accessories and clothing, service, facility and advertising. Not only is compliance with the Operation Standards a first step towards delivering the ultimate customer experience in your dealership, it will also allow participation in the BRP Certification Program.

This document shall remain in effect until such time as it is superseded by a subsequent publication. This document is incorporated into the BRP Dealer Agreement (the "Agreement"). In case of conflict between this document and the Agreement, the Agreement shall prevail.

Throughout the term of the Agreement signed with Dealer, the Operation Standards are subject to revision or modification by BRP at its discretion. All changes that BRP may make to the Operation Standards (as applicable to all of its Dealers) shall be binding upon Dealer as if such changes were adopted expressly in writing by Dealer as amendments to the Agreement. Capitalized words or sentences that are not defined in this document shall have the meaning ascribed to them in the BRP Dealer Agreement and General Provisions.

**BRP Dealer Operation Standards**

1. **Business Operations**

    (a) <u>Financial Reports:</u> Dealer shall submit yearly financial statements to BRP. In U.S.A., financial statements shall be submitted to TCF Inventory Finance, Inc., or to BRP if another financial institution is used, no later than one hundred and twenty (120) days following the close of Dealer fiscal year. In Canada, financial statements shall be submitted to TCF Commercial Finance Canada, Inc., or to BRP if another financial institution is used, no later than one hundred and eighty (180) days following the close of Dealer fiscal year.

    (b) <u>Technology Infrastructure:</u> Dealer shall have and maintain operational at all times a computer system equipped with the following mandatory configuration:

        (i) <u>Hardware:</u>

            a. Processor of 2 GHz or faster; Quad Core Processor i3 or equivalent (1.5 Ghz Processor minimum as long as the Processor is Quad Core);
            b. High speed internet connection;
            c. 4 GB of RAM minimum;
            d. USB port to connect a VCI;
            e. 1 GB of disc space to store applications data and updates.

        (ii) <u>Software:</u>

            a. Windows 7, Windows 8.1 or Windows 10;
            b. BOSSWeb is optimized for Microsoft Internet Explorer 11, Chrome, Firefox, Safari and Edge;
            c. Adobe Acrobat Reader 9.5 or newer.

    (c) <u>Website:</u> Dealer shall have and maintain operational at all times a website to promote BRP Products, display address, hours of operations and contact information.

    (d) <u>Dealer Management System ("DMS"):</u> The Dealer shall operate a DMS software that provides the following minimum functionality:

        (i) Major unit sales and inventory management;
        (ii) Parts sales and inventory management;
        (iii) Service sales and management;
        (iv) Customer record management;
        (v) Departmental and transaction reporting capabilities.

2. **Unit Sales**

    (a) <u>Minimum Sales Performance:</u> For each Product line carried, excluding Can-Am side-by-side and Can-Am 3-Wheel, the following minimum sales performance shall be achieved by dealer:

        (i) For dealers carrying Ski-Doo snowmobile: either (a) an in-PMA market share of at least twenty-five percent (25%) of the average peer market share in PMA (on a twelve (12) month rolling period. Dealer's peers are defined as dealers with similar urbanicity within their respective region) or (b) total sales volume of at least nine (9) units (in and out of PMA).

        (ii) For dealers carrying Sea-Doo personal watercraft: either (a) an in-PMA market share of at least twenty-five percent (25%) of the average peer market share in PMA (on a twelve (12) month rolling period. Dealer's peers are defined as dealers with similar urbanicity



**BRP Dealer Operation Standards**

within their respective region) or (b) total sales volume of at least six (6) units (in and out of PMA).

(iii) For dealers carrying Can-Am ATV and Can-Am side-by-side in the off-road segment: either (a) an in-PMA market share of at least twenty-five percent (25%) of the average peer market share in PMA (on a twelve (12) month rolling period. Dealer's peers are defined as dealers with similar urbanicity within their respective region) or (b) total sales volume of five (5) units (in and out of PMA) or (c) have a combined Can-Am ATV and Can-Am side-by-side total sales volume of twelve (12) units.

(iv) For dealers carrying only the Can-Am ATV in the off-road segment: either (a) an in-PMA market share of at least twenty-five percent (25%) of the average peer market share in PMA (on a twelve (12) month rolling period. Dealer's peers are defined as dealers with similar urbanicity within their respective region) or (b) total sales volume of five (5) units (in and out of PMA).

(b) Minimum Line Representation ("MLR"): For each Product line carried, Dealer agrees to place Orders and stock on premises an adequate representation of a range of vehicles based on market potential in Dealer's PMA, the whole as set forth by the MLR requirements in the Dealer Binder.

(c) Interior Display: Dealer shall provide a BRP exclusive zone within the dealership showroom, per Product line, dedicated to showcasing new units. This zone shall be at least six hundred (600) square feet (55.74 square meters) for each Product line carried, in season, as defined in Appendix 1. For Dealers carrying three (3) Product lines or more, this minimum requirement shall never exceed twelve hundred (1,200) square feet (111.48 square meters) at any time. For the purpose of this Paragraph, the Can-Am ATV and Can-Am side-by-side products shall be considered as one product line.

(d) Demonstrator Unit: Dealer shall ensure that demonstrator vehicles are clean, in good conditions, well cared for and free of any outstanding warranty campaigns. In addition, Dealer carrying 3-Wheel shall maintain at least one (1) Spyder model and one (1) Ryker model as demonstrator.

(e) Documented Sales Process: Dealer shall have a documented sales process and provide it to BRP upon request.

(f) Sales Training: Dealer shall have at least one (1) sales employee trained as a BRP brand specialist, per product line carried. To be trained as a brand specialist, a sales employee needs to successfully complete, for each product line carried, the online training listed in the section "Dealer Agreement/Operation Standard BRP Brand Specialist" that can be found in the most recent Certification Detailed Guide.

3. **Accessories and/or Clothing and Riding Gear**

(a) Accessory and/or Clothing and Riding Gear Display: Dealer shall provide an area dedicated exclusively to showcasing BRP accessories and / or clothing and riding gear. Dealer shall represent each product line carried. For the purpose of this Paragraph, the Can-Am ATV and Can-Am side-by-side products shall be considered as one (1) product line. This area must be, at a minimum, twelve (12) (3.66 linear meters) linear feet of wall panels* or floor display fixtures* (i.e. display fixtures or gondolas), or a combination, for each product line carried.

- 12 linear feet made up of 4 panels measuring 3' wide x 8' high (0.91 m wide x 2.44 m high) and / or 2 floor display fixtures measuring 6' wide x 3' high (1.83 m wide x 0.91 m high)



FILED: MONTGOMERY COUNTY CLERK 01/26/2023 03:53 PM
NYSCEF DOC. NO. 5

INDEX NO. EF2023-49
RECEIVED NYSCEF: 01/26/2023

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 52 of 60

**BRP Dealer Operation Standards**

4. <u>**Service**</u>

   (a) <u>Technical Training:</u> Dealer shall have at least one (1) service technician trained at the BRP technician level, per product line carried. To be a trained at the BRP technician level, a service technician needs to successfully complete, for each product line carried, the online training listed in the section "Dealer Agreement/Operation Standard BRP Technician" that can be found in the most recent Certification Detailed Guide.

   (b) <u>Special tools:</u> For each product line carried, Dealer shall have all mandatory tools specified in each BRP shop manual.

   (c) <u>Documented Service Process:</u> Dealer shall have a documented service process which shall integrate a formal check into BOSSWeb Info center in order to validate that the Product that is being Serviced is not affected by a campaign or a bulletin before delivering it back to the consumer.

5. <u>**Facility**</u>

   (a) <u>Exterior Signage:</u> Dealership shall identify itself as an authorized BRP product Dealership by means of current, permanent, exterior and illuminated BRP brand signage approved by BRP. Starting February 1, 2020, only the signage designs compliant with the BRP Exterior Signage Guidebook issued in November 2016 and onward will satisfy the requirements of the Dealer Agreement Operation Standards. All BRP signage and Dealer specific signs shall be exempt of damages at all times. All outdated signage shall be removed.

   (b) <u>General Facility Appearance:</u> Dealer is required to provide, at all times, clean and well organized facilities, both interior and exterior, that are adequate to accommodate units and PAC displays, stocking of parts and service of Products.

   (c) <u>Service Reception and Write-Up Area:</u> Dealer shall have a service reception and write-up area clearly identified and readily apparent to the customers.

   (d) <u>Service Department:</u> Dealer shall have a service area of sufficient size to meet its Service responsibilities. The service area shall be equipped with a minimum of one (1) service bay or work station per Product line carried. For the purpose of this Paragraph, the Can-Am ATV and Can-Am side-by-side products shall be considered as one product line. If the Dealer carries all BRP Product lines, a minimum of three (3) service bays or work stations are required, due to seasonality of the Products. These service bays or work stations do not have to be dedicated solely to the service of BRP Products.

   (e) <u>Storage Area for Parts:</u> Dealer shall have a storage area for BRP parts, accessories and clothing back stock.

   (f) <u>Interior Floors and Walls:</u> All interior floors and walls must have a finished surface. Acceptable flooring includes polished concrete, hardwood, polymer, vinyl composition tile, linoleum, and laminate. Preferred flooring per the BRP Retail Environment Guidebook is polished concrete.

   (g) <u>Restrooms:</u> Dealer shall provide a clean, functional and well-maintained customer restroom(s).

   (h) <u>Hours of Operation:</u> Dealer hours of operation for all departments shall be clearly posted at the main customer entrance.

BRP Dealer Operation Standards - V.8
**Confidential – Do not copy or distribute. For Dealer internal use only.**

CDN / US

Page 6 of 8

**BRP Dealer Operation Standards**

6.  <u>Advertising</u>

    (a) <u>Point of Purchase (P.O.P) and Promotional Displays:</u> Dealer shall accept the shipment and billing of P.O.P elements and promotional displays for every product Line carried. Dealer shall update P.O.P elements and promotional displays as new materials are provided by BRP and shall promptly remove outdated materials.

BRP Dealer Operation Standards - V.8
Confidential – Do not copy or distribute. For Dealer internal use only.

CDN / US
Page 7 of 8

**BRP Dealer Operation Standards**

### Appendix 1 – In and Off Season Dates

| Ski-Doo snowmobile | In Season | Off Season |
|---|---|---|
| | November 1 to January 31 | February 1 to October 31 |

| Sea-Doo personal watercraft | In Season | Off Season |
|---|---|---|
| | May 1 to July 31 | August 1 to April 30 |

| Can-Am 3-Wheel | In US states listed below and in all Canadian provinces | |
|---|---|---|
| | In Season | Off Season |
| | March 1 to September 30 | October 1 to February 28 or 29 |
| | In all other US states | |
| | In Season | Off Season |
| | All year | n/a |

| Can-Am ATV and SSV | In Season | Off Season |
|---|---|---|
| | All year | n/a |

List of States:

CT, DE, MD, ME, NH, NJ, NY, PA, RI, VA, VT, WV, IL, IN, MI, MN, OH, WI, AK, CO, IA, ID, KS, MO, MT, ND, NE, OR, SD, UT, WA, WY

# EXHIBIT D



7300 Dallas Pkwy Suite A120
Plano, Texas 75024
United States

www.brp.com

December 9, 2022

**By Certified Mail and email**

Alpin Haus Ski Shop, Inc.
4850 State Hwy 30
Amsterdam, NY, 12010
Att: Andrew Heck
aheck@alpinhaus.com

Re: 690181 – Alpin Haus Ski Shop, Inc. – Dealer Management System

Dear Mr. Heck,

The purpose of this letter is to inform you that Motility Software Solutions Dealer Management System ("DMS") will no longer be part of the Dealer Connect Program ("DCP") and as such will no longer be recognized as a DCP certified DMS.

Although you are now non-compliant with your Dealer Agreement for using a non DCP DMS, we will be waiving this criteria because of these special circumstances. This being said, we ask that you sign a contract with a DCP DMS within **three (3) months** from receiving this letter and that this system be fully operational within **three (3) months** of signing the contract. If for any reason this timeline cannot be respected, BRP will automatically change your status to non-compliant with this Operation Standard.

Consequently, we have attached a list of twenty-two (22) DCP certified DMS and how many Application Programming Interface ("API") have been developed with BRP so far and recommend that you start looking into one of these providers immediately.

Once you have a signed contract and an implementation date, we ask that you contact your Dealer Network Coordinator, Chantal Harper by email chantal.harper@brp.com to provide this paperwork. If you require information regarding the DCP certified DMS mentioned in the attachment, please contact the provider directly.

Respectfully,

Marc-Andre Sharpe
Team Leader – North American Network Development Operations
BRP
attachment

Ski-Doo
Lynx
Sea-Doo
Can-Am
Rotax
Alumacraft
Manitou
Quintrex

FILED: MONTGOMERY COUNTY CLERK 01/26/2023 03:53 PM
NYSCEF DOC. NO. 6

INDEX NO. EF2023-49
RECEIVED NYSCEF: 01/26/2023

Case 1:23-cv-00204-AMN-DJS    Document 2    Filed 02/15/23    Page 57 of 60

Page 2

### Dealer Connect Program Certified DMS Providers

| Company | System | Number of Integration (Total 11) | Website | Informational Flyer |
|---|---|---|---|---|
| Autoby Solutions | PowerTrac | 11 | http://www.autobysolutions.com/as/home.php | |
| Avonbrook DMS | FortunaPro | 1 | https://avonbrook.com/us/ | VIEW |
| Basic Software Systems | Basic Software | 0 | https://www.basic-software.com/ | VIEW |
| BIT Dealership Software | BIT | 9 | http://www.bitdms.com/ | VIEW |
| Blackpurl | Blackpurl | 10 | https://www.blackpurl.com/ | VIEW |
| CDK Global Recreation | LightspeedEVO | 11 | https://cdkglobalrecreation.com/powersports/ | VIEW |
| CDK Global Recreation | IntelliDealer 5.0 | 7 | https://www.cdkglobal.com/us/agriculture/dms/intellidealerfm-dms | |
| DealerVu | DealerVu | 10 | http://www.dealervu.com/ | |
| DIS (Constellation) | DIS Quantum | 0 | https://www.discorp.com/ | |
| Dominion Dealer Solutions | DX1 Powersports | 11 | http://dx1app.com/ | VIEW |
| Dominion Dealer Solutions | Zil | 9 | https://www.zildms.com | VIEW |
| Harley-Davidson Dealer Systems | TalonES DMS | 6 | https://hdds.com/ | VIEW |
| HBS System | Netview | 2 | https://hbssystems.com/ | VIEW |
| Ideal Computer Systems (Constellation) | Ideal | 8 | http://www.idealcomputersystems.com/ | VIEW |
| Integrated Dealer Systems (IDS) | ASTRA G2 | 0 | https://www.ids-astra.com/ | |
| L.A.R.S. Computer Systems | L.A.R.S. | 9 | http://larsinc.com/ | VIEW |
| Lautopak Logiciels Inc. | IMPAK NET | 9 | http://www.lautopak.com/ | VIEW |
| MIC Systems and Software Inc. | Commander | 3 | http://commanderme.com/ | VIEW |
| NizeX | Lizzy | 7 | http://www.nizex.com/ | VIEW |
| PBS Systems | PBS Aristo V10 | 9 | http://www.pbssystems.com/ | VIEW |
| Serti Information Systems | Serti Dealership System | 7 | http://dms.serti.com/fr/ | VIEW |
| Wallace Software Solutions | Powersoft | 1 | https://wallacedms.com/ | VIEW |

Last update: December 8th, 2022

Always stay up-to-date with the most accurate list of certified providers. You can easily access it in the Knowledge Center on BOSSWeb, keyword search DMS or article number 132410.

Ski-Doo
Lynx
Sea-Doo
Can-Am
Rotax
Alumacraft
Manitou
Quintrex

# EXHIBIT E

Case 1:23-cv-00204-AMN-DJS   Document 2   Filed 02/15/23   Page 59 of 60

O·CONNELL & ARONOWITZ

A T T O R N E Y S   A T   L A W

January 3, 2023

EDWARD J. O'CONNELL
1925-1939
SAMUEL E. ARONOWITZ
1925-1973
LEWIS A. ARONOWITZ
1951-1979

IN MEMORIAM:
HON. LEONARD A. WEISS
2020-2022

**Via FedEx Overnight Mail: (tracking #:7709 2905 5793)**

Marc-Andre Sharpe
Team Leader – North American Network Development Operations
BRP US, Inc.
7300 Dallas Parkway, Suite A120
Plano, TX 75024

Re:     **Alpin Haus Ski Shop, Inc.**
        **Dealer Management System**

Dear Mr. Sharpe:

STEPHEN R. COFFEY
THOMAS J. DiNOVO
PAMELA A. NICHOLS
JEFFREY A. SIEGEL
DAVID R. ROSS
KURT E. BRATTEN
MICHAEL P. McDERMOTT
PETER A. PASTORE
KEVIN LAURILLIARD
KELLY J. MIKULLITZ
WILLIAM F. BERGLUND
ROBERT J. KOSHGARIAN
MATTHEW J. DORSEY
FRANCIS J. SMITH, JR.
PAUL C. PASTORE
GRAIG F. ZAPPIA
CHAD A. JEROME

        This firm represents Alpin Haus Ski Shop, Inc. ("Alpin Haus"), and our client has forwarded your correspondence of December 9, 2022, for a response.

        Alpin Haus is one of upstate New York's largest and most reputable dealers of recreational and sports vehicles. It has sold Ski-Doo snowmobiles and Sea-Doo personal watercraft for over fifty years. Alpin Haus' current Dealer Agreement with BRP US, Inc. ("BRP"), is scheduled to expire on January 31, 2023.  Under the BRP Dealer Operation Standards incorporated into that Alpin Haus-BRP Dealer Agreement, Alpin Haus is required to "operate a [Dealer Management System] software that provides the following minimum functionality:

OF COUNSEL:
CORNELIUS D. MURRAY
JEFFREY J. SHERRIN
RICHARD S. HARROW
FLORENCE M. RICHARDSON
CRISTINA D. COMMISSO
DANIEL J. TUCZINSKI
KAREN MARTINO VALLE
BRIAN M. CULNAN
ANDREW J. WEISSENBERG

(i)     Major unit sales and inventory management;
(ii)    Parts sales and inventory management;
(iii)   Service sales and management;
(iv)    Customer record management;
(v)     Departmental and transaction reporting capabilities."

MICHAEL Y. HAWRYLCHAK
SAMANTHA L. FEMIA
MARINA W. CHU
NICHOLAS M. CERVINI
MICHAEL J. LAWSON
COLLEEN R. PIERSON

HOLLY E. VEGAS*
(DIRECTOR, HEALTHCARE
CONSULTING GROUP)

*NOT A MEMBER OF THE
LEGAL PRACTICE

*See* BRP Dealer Operation Standards, § 1(d) (2019 version). Alpin Haus has utilized the well-regarded Motility Software Solutions Dealer Management System ("Motility") for nearly ten years, and BRP had deemed Alpin Haus' use of Motility as compliant with the foregoing standard.

        We understand that BRP officials have informed Alpin Haus that, in order to renew its status as an authorized BRP dealer, Alpin Haus must comply with a revised

54 STATE STREET • ALBANY, NY 12207 • (p) 518-462-5601 • (f) 518-462-2670
*SERVICE BY FAX NOT ACCEPTED.*
*With offices in Albany and Saratoga Springs.*
www.oalaw.com

Page 2                                                                    January 3, 2023

Dealer Agreement and meet revised Dealer Operation Standards. As relevant to this discussion, BRP's revised Dealer Operation Standards (as to DMS software) would require Alpin Haus to "use a Dealer Connect Program certified DMS." *See* BRP Dealer Operation Standards, § 1(d) (updated February 1, 2022). We are advised that BRP does not consider the Motility DMS system as meeting this standard, and BRP has threatened to not renew/terminate Alpin Haus' Dealer Agreement with BRP unless Alpin Haus stops using the Motility system and starts to employ a DMS system specifically approved by BRP. In short, BRP is demanding that Alpin Haus undergo expensive and otherwise unnecessary changes to its business operations to comply with this BRP revised operating standard.

The New York Franchised Motor Vehicle Dealer Act (Vehicle and Traffic Law ["VTL"] §§ 461-71), prohibits franchisors such as BRP from, among other things: (i) seeking to coerce dealers into signing agreements or otherwise acting contrary to their economic interests (VTL § 463[2][b]), (ii) conditioning franchise renewals on substantial renovations by the dealer (VTL § 463[2][c]), (iii) refusing to renew a dealer agreement except for "due cause" and after proper notice (VTL § 463[d][1]), and (iv) imposing unreasonable restrictions on renewal or conditioning renewal on compliance with subjective standards (VTL § 466[1]).

From a business perspective, we are stunned by BRP's willingness to disregard its long-standing business relationship with Alpin Haus over this new and seemingly arbitrary standard. More importantly, from a legal perspective, BRP's threatened refusal to renew/terminate Alpin Haus' Dealer Agreement for non-compliance with this new operating standard constitutes multiple violations of New York law. Consequently, we hereby demand that, within ten (10) days of the date of this correspondence, BRP notify Alpin Haus in writing that (1) it intends to renew the parties' Dealer Agreement, and (2) because it already uses a well-regarded DMS system, Alpin Haus will not be required to comply with the revised (2022) DMS operating standard. Should BRP fail to do so, Alpin Haus reserves the right to take all legal action necessary to protect its rights, including invocation of its right under VTL § 463(2)(e)(1) to obtain an automatic stay of the proposed termination. We hope, of course, that will not be necessary.

Should you or BRP's counsel wish to discuss this matter further, please feel free to contact me.

Very truly yours,

O'CONNELL AND ARONOWITZ, P.C.

By: _____
Brian M. Culnan, Esq.

BMC/nml

cc: Mr. Andy Heck (via e-mail)
    Ms. Chantal Harper (via e-mail)